ALFRED H. ANDREWS, Impl'd, etc.,

v.

MARY BOEDECKER, Adm'x, etc.

1. MASTER AND SERVANT.—In an action brought by an administratrix against an employer for damages, for 'negligence causing the death of the plaintiff's intestate, the question of whether the relation be that of master and servant, so as to invoke an application of the rule of *respondeat superior*, is to be determined mainly by ascertaining from the contract of employment, whether the employer retained the power of directing and controlling the work, or has given it to the contractor. If the latter, the party undertaking to do the work is a contractor and not a servant.

2. DAMAGES—EXCESSIVE.—Damages for $5,000 held excessive for the death of a young laborer, aged nineteen years and eight months, whose wages were $1.75 per day, with a prospect of being increased to $2.00

APPEAL from the Superior Court of Cook county; the HON. JOSEPH E. GARY, Judge, presiding. Opinion filed November 25, 1885.

This was an action on the case brought by Mary J. Boedecker, administratrix of the estate of Henry J. Boedecker, deceased, against Alfred H. Andrews and Frank Douglas, to recover damages for the death of the plaintiff's intestate, caused, as is alleged, by the negligence of the defendants.

The declaration consists of two counts, of which the first charges that the defendants were in possession of a certain parcel of land in the city of Chicago, used by them for the purpose of piling, storing and drying lumber thereon; that it was their duty to use proper and reasonable care and skill in so doing, to prevent injury to persons lawfully upon or near said premises, but that the defendants, by their servants, carelessly,

negligently and unskillfully piled and caused to be piled a large quantity of lumber on the south side of said premises, and carelessly, negligently and unskillfully permitted the same to be piled without any proper and sufficient braces or other means to keep the same from falling and sliding over, and that while said intestate was, with all due care and diligence, lawfully on other land immediately south of said premises, said lumber, by reason of the careless, negligent and unskillful manner in which the same was piled by the defendants, fell and slid over upon said intestate and killed him. The second count is like the first, except that it alleges that Douglas was in possession of the lot, and that the lumber was piled on a portion of it by Andrews, by Douglas' permission.

The evidence shows that on the 15th day of January, 1884, a portion of a large pile of lumber which had been for several days standing near the south line of a certain lot in the city of Chicago fell over onto the adjoining lot, breaking down the fence between the lots and crushing a privy on the adjoining lot in which the deceased happened to be at the time, causing his instant death.

The evidence tends to show that Douglas was the owner of a leasehold estate in the premises in question, and the proprietor of a dry-kiln situated thereon, and that he was then operating said dry-kiln mainly or exclusively in drying lumber for the firm of A. H. Andrews & Co., at a contract price of $3 per thousand feet ; that Andrews & Co. brought the lumber to the kiln and took it away when dried ; that one Andrew R. Honey was employed by Douglas to receive the lumber brought to be dried on a platform provided for the purpose, put it on cars or trucks which run it through the kiln, and when dried, to deliver it to the teams of Andrews & Co. For this work he was paid by Douglas at the rate of seventy-five cents per thousand feet. Douglas gave little personal attention to the kiln, leaving it to the care of Honey under his contract.

The evidence tended to show that the kiln held about 30,000 feet, while the platform held only about 12,000 or 14,000 feet ; that to keep the kiln supplied with lumber large quantities were delivered by Andrews & Co.'s teamsters and deposited

Andrews v. Boedecker.

on the ground on different parts of the lot, and that for the extra handling of the lumber thereby rendered necessary, Andrews & Co. paid Honey a certain price per thousand feet.

The lumber which caused the death of the plaintiff's intestate was a pile of maple lumber ten or twelve feet high. The evidence tends to show that the lower part of the pile consisted of a number of loads of lumber thrown down on the ground several days previously by the teamsters of Andrews & Co.; that two or three days before the accident, more lumber was delivered by said teamsters, which was received by Honey and piled by him on the top of the lumber previously thrown down, thus forming the pile in question; that by piling the lumber high, Honey was able more easily to place it on the platform, and that at the time the pile fell, Honey was engaged in transferring the lumber therefrom to the platform.

Douglas and Andrews filed separate pleas, were represented by different counsel and defended separately, and the jury by their verdict found Douglas not guilty, but found Andrews guilty, and assessed the plaintiff's damages against him at $5,000. For this sum and costs, the court, after overruling Andrews' motion for a new trial, gave judgment against him.

Andrews made his defense upon the theory, among other things, that the death of the plaintiff's intestate was caused by the negligence of Honey, and that Honey, in what he did in the premises, was acting as an independent contractor, and not as the servant of Andrews, and there was evidence tending to support that theory of the case. At the instance of Douglas the court gave to the jury the following instruction:

"The jury are instructed that the said Andrew R. Honey might legally and properly be employed and paid by Andrews & Co. to pile up the lumber delivered by them at said kiln, and afterward to place the said lumber on the platform ready to be put into the kiln. And the jury are further instructed, that it was also legal and proper for the defendant Douglas to employ and pay the said Honey to take the lumber from said platform and put the same into the kiln, and thereafter deliver the same out of said kiln. In such case the said Honey would be the servant of the said Andrews & Co., in piling said lum-

ber, and the servant of said Douglas in handling said lumber after it was put upon said platform."

To the giving of the foregoing instruction defendant Andrews duly excepted, and he now brings the record to this court by appeal.

Mr. LYMAN M. PAINE, for appellant; that where an injury is done by a person exercising an independent employment, doing work according to his own ideas, without directions or control by his employer, the party employing him is not responsible to the person injured, unless the work is *per se* a nuisance, cited Scammon v. Chicago, 25 Ill. 424; Schwartz v. Gilmore, 45 Ill. 456; Chicago v. Joney, 60 Ill. 383; Pfau v. Williamson, 63 Ill. 16; West v. St. L., V., etc., R. R. Co., 63 Ill. 545; Prairie S. L. & T. Co. v. Doig, 70 Ill. 52; Hale v. Johnson, 80 Ill. 185; Kepperly v. Ramsden, 83 Ill. 354; Arasmith v. Temple, 11 Bradwell, 39; Addison on Torts, § 579; Cooley on Torts, 546.

The damages are excessive, because the utmost that can lawfully be recovered in cases of this kind is compensation for pecuniary loss: Chicago v. Major, 18 Ill. 349; C. & R. I. R. R. Co. v. Morris, 26 Ill. 400; C. & A. R. R. Co. v. Shannon, 43 Ill. 346; C. & N. W. R. R. Co. v. Swett, 45 Ill. 197; Conant v. Griffin, 48 Ill. 410; I. C. R. R. Co. v. Welden, 52 Ill. 290; I. C. R. R. Co. v. Baches, 55 Ill. 379; Chicago v. Scholten, 75 Ill. 468; C. & A. R. R. Co. v. Becker, 76 Ill. 25; Quincy Coal Co. v. Hood, 77 Ill. 68; C., B. & Q. R. R. Co. v. Harwood, 80 Ill. 88; R. R. I., etc., R. R. Co. v. Delaney, 82 Ill. 198.

Mr. GEORGE W. STANFORD, for appellee; that an instruction should not single out and give undue prominence to facts, cited Homes v. Hale, 71 Ill. 552; Shugart v. Haliday, 2 Bradwell, 45; Hewett v. Johnson, 72 Ill. 513; Hutchinson v. Crain, 3 Bradwell, 20; Protection Life Ins. Co. v. Dill, 91 Ill. 174.

The damages are not excessive: Chicago v. Keefe, 2 N. E. R. 270; Hough Kirk v. President, etc., 92 N. Y. 219; Bierbauer v. N. Y. C. R. R. Co., 15 Hun, 559; Erwin v. Nev-

ersink Steamboat Co., 23 Hun, 573; Fitzgerald v. Nat. S. B. Co., 1 Weekly Digest, 225 ; Railroad Co. v. Barrow, 5 Wall. 90.

BAILEY, P. J.  There being evidence tending to show that the death of the plaintiff's intestate was caused by the negligence of Andrew R. Honey in piling the lumber which fell upon and killed him, the question arose whether in that particular matter he was acting independently or as the servant of defendant Andrews.  The evidence showed that he was employed and paid to do that work by Andrews, but it was insisted by the latter, and the evidence also showed that Honey's relation to him in the matter was that of an independent contractor, and not that of a servant.  Upon this question the court gave to the jury an instruction at the instance of defendant Douglas, holding, in effect, that if Honey was employed and paid by Andrews to do the work, that alone constituted him a servant of Andrews.

The question in a case of this character, whether the relation be that of master and servant, so as to invoke an application of the rule of *respondeat superior,* is to be determined mainly by ascertaining from the contract of employment whether the employer retains the power of directing and controlling the work, or has given it to the contractor.  If the employer retains no control over the details of the work, but contracts in such manner that the other party is to do it according to his own ideas and without being subject to the control of his employer in respect to the manner of doing it, the party undertaking to do the work is a contractor and not a servant.  This rule is abundantly supported by the numerous authorities cited by the counsel for the appellant, and has received elaborate consideration by us in the recent case of Chicago City Ry. Co. v. Hennessey, 16 Bradwell, 153; it is therefore unnecessary for us to discuss it further.

The fact that Andrews employed and paid Honey to pile the lumber, was not the test by which to determine whether the relation of master and servant existed, so as to render Andrews liable for the negligence of Honey.  The instruction, then, was clearly erroneous.

We think that the damages awarded by the jury were excessive. The evidence shows that the deceased, at the time of his death, was about nineteen years and eight months old ; that he was a mechanic, and was earning $1.75 per day, and was in prospect of having his wages advanced to $2.00 per day ; that he left surviving him his mother and six brothers and sisters, of whom three were older and three younger than himself; that up to the time of his death he was in the habit of giving all his wages to his mother. This in substance was all the evidence bearing on the question of damages.

The damages awarded were $5,000. This is a sum which, if kept properly invested, would produce a perpetual income equal at least to the entire wages the deceased would be likely to be able to earn, after his necessary personal expenses should be deducted. While there is no fixed or exact measure of damages in cases of this character, and much must be left to the sound discretion of the jury, yet in this as in all other matters, this finding of the jury must be based upon the evidence. They may assess such damages as will be a just and fair compensation for the pecuniary loss suffered by the next of kin from the death of the deceased, and on doing so, they may take into consideration every reasonable expectation the survivors may have had of pecuniary benefit or advantage from the continuance of his life.

Until the deceased attained his majority, his mother would of course have been entitled, if he had lived, to his earnings, and would have been liable for his support. On his reaching his majority, that right would have ceased and from that time on, the pecuniary loss of the next of kin must be measured largely by such pecuniary benefits as duty, affection or gratitude would probably have moved him to bestow. But there is certainly no basis in the evidence for supposing that such benefits would extend to the entire net income of the deceased during his entire life, and to the leaving behind him for their benefit of a legacy of the principal sum of $5,000.

For the reasons above given, the judgment will be reversed and the cause remanded.

Judgment reversed.