JOHN WILTSE v. THE STATE ROAD BRIDGE COMPANY.

*Master and servant—Liability for negligence—Evidence of gentleness of horse.*

1. In a suit for damages for injuries sustained by the alleged frightening of plaintiff's horse while driving across a bridge by the act of defendant, plaintiff was asked if he ever met any other object on the bridge, with the horse, such as usually scare horses, and, further, what objects he had before met on the bridge while driving the horse.

    *Held*, that the evidence was admissible, as the answers, if responsive, would tend to show the *character* of the animal for gentleness, and the plaintiff's knowledge concerning it.

2. On the undisputed facts in this case (see opinion, pp. 642, 643) the court should have directed a verdict for the defendant.

3. The liability of the master does not reach wrongs caused by carelessness of servants in work *not* directed by the master, as business of a third party, or of the servant himself, or of the master which he did not expressly or impliedly direct him to perform. In other words, the responsibility of the master grows out of, is measured by, and begins and ends with, his control of the servant.

Error to Saginaw. (Gage, J.)    Argued October 14, 1886. Decided November 17, 1886.

Case.    Defendant brings error.    Reversed.    The facts are stated in the opinion.

*Wood & Joslin,* for appellant.

*D. P. Foote,* for plaintiff.

SHERWOOD, J.    The defendant in this case is a corporation, owning and maintaining a toll-bridge spanning the Tittabawassee river, about three miles west of the city of Saginaw, where the Gratiot State road crosses the river.

The bridge is about 160 rods in length, and consists of an

east and west approach, each being about 70 rods long, and an iron bridge over the waters about 20 rods in length. The toll-house is near the channel bank on the east approach. It stands on piles on the side of, and on a level with, the bridge. The roadway of the bridge at the toll-house, for a distance of about 50 feet, is narrowed, to the width of 12 feet, by two projections on the south side of the bridge, extending in upon it three feet, and by two like projections and a storm door at the toll-house, upon the north side. These projections supported the roof over the toll-gate. On the west end of the house was a large platform, raised about one foot above the floor of the bridge, and used as an appendage to the house and kitchen, and serving as a back yard to the premises.

The house was used and occupied as the house of the toll-gate keeper, who at that time was Mrs. N. J. Dunn. She had lived in this house with her husband several years previously, and had all the time taken the toll, and looked after the bridge, keeping it free from obstructions, and in proper repair. Between the roadway, under the roof of the toll-gate, and the front of the house was a storm-door over the entrance, and between the storm-door and the east projection on the north side was a niche about six feet long and three and one-half wide. Mrs. Dunn received the use of the house and one dollar per day for her services from the company.

On the seventh day of May, 1885, Mrs. Dunn was engaged in cleaning house, and had removed some of her furniture out of the house upon the platform, and placed the lounge in the niche east of the door. The hired girl of Mrs. Dunn set the chairs out upon the platform, one of them having a tidy upon it. The furniture all belonged to Mrs. Dunn, and the company had no control over it, or the house while she lived in it.

The day was windy, and as the plaintiff was passing over

the bridge, on his way to Saginaw, with a horse and buggy, the horse took fright when opposite the platform, at the tidy fluttering in the wind, and sprang to the right, nearly bringing the buggy in contact with one of the south projections. The horse, however, was brought immediately under control of the plaintiff, who was driving on east, and when opposite the 'lounge the animal again became frightened at that, and sprang suddenly to the other side, and, the fore-wheel coming in contact with the other projection on that side, threw the plaintiff out of the buggy, seriously injuring him. The passage-way for teams and vehicles at this point was 12 feet wide. The horse was ordinarily gentle, and had frequently passed over the bridge before, and was managed as well by the plaintiff at the time of the accident as he could manage him and remain in the buggy.

This action is brought against the defendant company to recover damages for the injury sustained, alleging, as the grounds for recovery, that the placing of the furniture where it was, was negligence, and, under the circumstances, the defendant should be held liable therefor.

The cause was tried at the Saginaw circuit, and the plaintiff was allowed to recover $800 damages. The defendant brings error.

The record contains a bill of exceptions including all the evidence. Thirty-five errors are assigned, three of which relate to the rulings upon the trial, and the remainder to the charge of the court.

For the purpose of showing that the horse was ordinarily gentle, the plaintiff was asked, when upon the stand, the following questions:

"1. Did you ever meet any other object on this bridge, with this horse, such as usually scare horses?
"2. What objects or things had you met before on that bridge while driving this horse?"

No error was committed in allowing these questions to be

answered. The answers, if properly responsive, would tend to show the character of the animal for gentleness, and the plaintiff's knowledge concerning it.

At the time the plaintiff rested his case counsel for defendant claimed and argued that the plaintiff's testimony did not make out a case against the defendant. The court, in passing upon that question (and it was necessary for him so to do), stated the impression the proofs had made upon his mind. To the statements thus made, counsel for defendant took exception. The court failed to accept the views expressed by the defendant's counsel, and we do not think that the statements of the court, made at this time, were objectionable upon the grounds stated, or that they were even prejudicial to the defendant, as the case afterwards went to the jury. This disposes of the rulings upon the trial.

At the close of the trial the counsel for the defendant asked the court to instruct the jury that the plaintiff could not recover upon the case made by the testimony.

We think this instruction should have been given.

The testimony shows, without dispute or controversy, that the bridge was in good repair, and that the roadway over it was entirely unobstructed where the accident occurred, or at any other place thereon; that the toll-gate house was rented by Mrs. Dunn, the toll-gate keeper, and was both intended and used for that purpose; that it was connected with the bridge, but not with the roadway; that it sat three feet and five inches north of the north edge of the driveway, and that a railing was constructed in front of the kitchen and platform, and three feet five inches therefrom, along the edge of the driveway; that the recess where the lounge stood was three feet five inches wide before it reached the edge of the roadway, upon which it encroached slightly, but in no manner interfering with the passage of vehicles. The platform, recess, and other open places across the end of, and in front of, the toll-house were used by Mrs. Dunn in her house-

keeping business, and for the ordinary purposes thereof usual in such cases where small yards connect with the house. It also appears that the use she was making of the recess and platform at the time the plaintiff passe] was the ordinary one on the occasion of house-cleaning, and not extraordinary or unlawful, or even negligent.

So far as concerns the construction of the toll-house and its surroundings, and its connection with the bridge and roadway, and the use made thereof, they seem to have been well arranged, carefully kept, and used in the ordinary and proper manner.

At the time this accident occurred it further appears that Mrs. Dunn had in her employ, to assist her in her house-keeping work, a Miss Butts, and on that house-cleaning occasion she moved the furniture out of the rooms upon the platform, and, with her assistance, Mrs. Dunn removed the lounge from the sitting-room to the recess.

Mrs. Dunn was employed, as appears by the record, for a special service for the defendant. That service was to receive the toll from those using the bridge, see to it that the roadway was unobstructed, and to notify the company when the bridge needed repairs. She could live in the toll-house or not as she chose. The defendant had no interest in nor any control over her in conducting her household affairs or work, or over the acts of her servants while they were engaged in that business; and it is difficult to see how the defendant can be made liable for Mrs. Dunn's or her servant's negligent acts, if any such there were, while they were conducting their household affairs. Certainly the acts of Mrs. Dunn and Miss Butts, relied upon as negligent by the plaintiff, were not done in the employment or service of the defendant; neither were they directed by the defendant expressly or impliedly, but were done in Mrs. Dunn's own private business, without the knowledge or assent of the defendant, and at her own instance.

If the position taken by plaintiff's counsel is the correct one, the liability of the defendant could not be supported unless the acts which Mrs. Dunn and her servant committed, claimed to be negligent, were done while she was under the control and direction of the defendant, in its service, and in the scope of her employment.

"The liability of the master does not reach wrongs caused by carelessness of servants in work not directed by the master, as business of a third party, or of the servant himself, or of the master which he did not expressly or impliedly direct him to perform. The rule, briefly stated, is: The responsibility of the master grows out of, is measured by, and begins and ends with, his control of the servant."

1 Pars. Cont. 102; Cooley, Torts, 533; 1 Add. Torts, § 550, and note 1; 2 Hill. Torts, 432; Story, Ag. § 452; Paley, Ag. 296–298; Smith, Mast. & Serv. 322; *Baker v. Kinsey*, 38 Cal. 631; *Wright v. Wilcox*, 19 Wend. 343.

The difficulty in this case is that the acts complained of were not fairly or reasonably incident to the nature, character, or purpose of the business in which Mrs. Dunn was employed, or in discharging the duties with which she was intrusted, and the defendant cannot, under such circumstances, be made liable, even though her acts were negligent.

But I have not been able to discover that she committed any act of negligence in what she did. She made no use of the premises which she had not the right to make. If the plaintiff's horse was of the character the testimony tends to show him to have been, certainly it was the plaintiff's duty to have been more guarded in his management of the animal, and to have notice of the objects falling within view of the horse as he passed over the bridge. The plaintiff says, after he entered upon the bridge, he did not look to the right or left, or in front, in order to ascertain whether the passageway was clear and unobstructed, and safe for passage.

It is unnecessary to discuss the other exceptions. The

record clearly shows no liability on the part of the defendant, and the circuit judge should have so charged the jury. *Thompson v. Flint & P. M. Ry. Co.*, 57 Mich. 300.

The judgment should be reversed, and a new trial granted.

The other Justices concurred.