QUINN *v.* RAILROAD.

*(Jackson.*    May  2,  1895.)

1. MASTER AND SERVANT.  *Railroad company and its physician are not.*

A physician or surgeon employed by a railroad company to attend upon its employes injured in its service, does not bear the relation of servant to the company.  (*Post, pp. 716–718.*)

Cases cited: 11 Bush, 464; 92 Mo., 221; 63 Mich., 639; 17 Ill. App., 213; 60 Fed. Rep., 365.

2. RAILROADS.  *Not liable for injuries resulting from unskillfulness of their physicians.*

If a railroad company places an employe, injured in its service, in the care of a competent and reputable physician for treatment, it is not responsible for any injury resulting to the employe from the malpractice of the physician.  (*Post, pp. 718–720.*)

Cases cited: 13 So. Rep., 638; 60 Fed. Rep., 365; 13 N. E. Rep., 781 (S. C., 107 N. Y., 228); 28 N. E. Rep., 266; 18 Fed. Rep., 221; 120 Mass., 432; 20 L. R. A.. 338.

---

FROM  SHELBY.

---

Appeal  from  Circuit  Court  of  Shelby  County. L.  H.  ESTES,  J.

JAMES M.  GREER and C.  D.  M.  GREER for Quinn.

ADAMS  &  TRIMBLE  for  Railroad.

BEARD, J.    One Quinn, the intestate of plaintiff in error, was an employe of defendant, and was seriously crushed by the driving wheel of one of its engines while engaged in the discharge of his duty as switchman in the yards of the railroad at Holly Springs, Miss.    Immediately after the injury, he was taken in charge by a surgeon employed by the defendant to render surgical attention to such of its employes as were injured at that place while in its service.    He at once placed himself in communication by wire with the chief surgeon of the railroad, whose duty, under his employment, was to render personal attention in such cases, and to exercise supervisory care over its local surgeons, including the one in personal charge of Quinn.    This chief surgeon lived, and at the time was, in Memphis, in this State.    The result of this communication was that, the latter having decided it was best for the wounded man that he should be brought to his father's home in Memphis, where he could more safely and intelligently receive surgical care, announced his decision to the railroad authorities, and requested them to prepare at once to bring him in. In obedience to this direction, a special train was made up without unnecessary delay, and Quinn, accompanied by the Holly Springs surgeon, was taken on board, and, after a rapid run, was delivered over, at the depot of the railroad in Memphis, into the keeping of the chief surgeon.    Within a few hours thereafter the intestate of plaintiff died.

This action was brought to recover damages against the railroad for negligence in various particulars resulting in his death. Among other grounds of negligence laid in the declaration, was that defendant failed to provide the intestate with proper medical service, and that this failure greatly aggravated his condition and largely contributed to his death.

On the trial of the case the Court below excluded certain evidence offered by plaintiff in error, which tended to show that these surgeons were unskillful in their treatment of the patient, and that this unskillfulness was one of the active causes contributing to his death.

When he came to instruct the jury, the trial Judge, among other things, said to them: "If deceased was put in charge of physicians of good reputation, it was their business to stop the flow of blood, if any, and defendant is not liable for any failure to stop this flow while the patient was in charge of, or after he was put in the charge of, the physicians. If deceased was put in the hands of competent surgeons of good reputation and standing in their profession, defendant is not liable for any treatment given the patient by them, or by others under their advice."

The action of the Court below in excluding this testimony and in giving this instruction is now assigned as error.

Before considering this assignment, it is proper to say the record tends to show that both those

surgeons were men of fine reputation for learning, skill, and experience in their profession, and that for the service rendered to the deceased, as in all other similar cases, they were paid by the corporation, without cost or charge to him or to his estate.

The question presented by this assignment is new in this State. It is almost as new to the Courts outside the State. The diligence of counsel in this cause, and the investigations of this Court, have resulted in finding but few cases involving it, and these of so recent a date that neither they, nor the rule announced by them, have been carried into the latest text-books on railway law.

Plaintiff in error insists that the defendant in error is liable for the mistakes or malpractice of the surgeons in question; that their employment by the railroad created the relation of master and servant; and that the ordinary rule, which makes the master liable for the negligent acts of his servant within the scope of his employment, is to be applied in this case. If he be correct in his contention that the relation between the railroad and these surgeons was that of master and servant, then his conclusion would properly follow. But was that the relationship? We do not think so. The term "servant," as it is used in connection with the rule invoked, has a well-defined meaning. It "is applicable," says Mr. Thompson in his work on Negligence, Vol. II., p. 892, "to any relation in

which, with reference to the matter out of which an alleged wrong has sprung, the person sought to be charged had the right to control the action of the person doing the alleged wrong; and this right to control appears to be the conclusive test by which to determine whether the relation exists."

"For the relation to exist, so as to make the master responsible, he must not only have the power to select the servant, but to direct the mode of executing, and to so control him in his acts in the course of his employment, as to prevent injury to others." *Robinson* v. *Webb*, 11 Bush, 464. To the same effect is *Mound City Co.* v. *Conlon*, 92 Mo., 221; *Wiltse* v. *State*, *etc.*, 63 Mich., 639; *Anderson* v. *Bordecker*, 17 Ill. App., 213.

The term "master" is equally well defined in the law. A "master," in the sense of the rule, is "one who has the superior choice, control, and direction; whose will is represented not merely in the ultimate result in hand, but in all its details; one who is the responsible head of a given industry; one who has the power to discharge; one who not only prescribes the duty, but directs, and may at any time direct, the means and methods of doing the work." Eng. & Am. Ency. of Law, Vol. XIV., p. 745.

If it be, as these authorities indicate (and it cannot be otherwise), that the decisive test of this relationship, or even one of its decisive tests, is that the master has the right to select the end of the

servant's employment, and that the master's uncon-
trolled will is the law of the servant "in the means
and methods" by which this end is to be reached,
then it cannot be maintained that these surgeons
were the "servants" of this corporation. They
were not employed to do ordinary corporate work,
but to render services requiring special training, skill,
and experience. To perform these services so as to
make them effectual for the saving of life or limb,
it was necessary that these surgeons should bring to
their work not only their best skill; but the right
to exercise it in accordance with their soundest judg-
ment and without interference. Not only was this the
right of these surgeons, but it was as well a duty
that the law imposed. If the railroad authorities
had undertaken to direct them as to the method of
treatment of the injured man, and this method was
regarded by them as unwise, they would have been
"bound to exercise their own superior skill and better
judgment and to disobey their employers, if in their
opinion the welfare of the patient required it."
*Union Pac. R. R.* v. *Artist,* 60 Fed. Rep. 365
(8 U. S. Cir. Ct. App.).

In accordance with this view, it has been uni-
formly held, so far as we have been able to dis-
cover, that, having selected surgeons skilled and
competent in their profession, the corporation has
discharged every duty that humanity or sound morals
impose, and that it is to no extent liable for the
mistakes they may subsequently commit.

In the *South Florida Railway Co.* v. *Price*, 13 So. Rep., 638 (decided July, 1893), ·the declaration averred that the surgeon employed by the defendant to render surgical aid to its employes injured in its service, set the plaintiff's arm in an "unskilled and negligent manner," and that for this the corporation was liable. To this claim the Court says: "Even though we should admit it to be within the corporate powers of such a company to obligate itself to the rendition of medical or surgical aid to its sick or injured employes, by assuming it as a duty or otherwise, or to become liable under any circumstances for any negligence of any such surgeon acting in the line of his profession, still, it . seems to be well settled that it will have performed its entire duty in that respect, when it employs a person of ordinary competency and skill in that profession, and that, having done so, it cannot be made liable for the carelessness or negligence of such surgeon in the performance of his duties as such."

In the *Union Pacific Railway Co.* v. *Artist*, 60 Fed. Rep., 365 (8 U. S. Cir. Ct. of App.), the facts were that each employe of the railroad was required to contribute out of his wages twenty-five cents a month, and the corporation, out of its general treasury, contributed from $2,000 to $4,000 per month to establish a hospital and employ physicians and surgeons for the care of its wounded and sick employes, without any charge to them or profit to the railway. On these facts, it was held that the

company was not liable for an injury to one of its employes from the malpractice of a surgeon doing service in the hospital. The Court says, through Judge Sanborn: "The result is, that the doctrine of *respondeat superior* has no application to this case. The only contract the law implies here is the agreement on the part of the company to use reasonable care to select and obtain skillful physicians and careful attendants; and, if the company performed that contract, it was responsible no further."

In accord with these are the cases of *Lautheim* v. *Netherland Steamship Co.*, 13 N. E. Rep., 781 (S. C., 107 N. Y., 228); *O'Brien* v. *Cunard*, 28 N. E. Rep., 266; *Secord* v. *Railway Co.*, 18 Fed. Rep., 221; *McDonald* v. *Mass. Gen. Hospital*, 120 Mass., 432, and *Richardson* v. *Carbon Hill Co.*, 20 L. R. A., 338.

We think the sanction of authority and of reason is with the ruling of the Circuit Judge on this point. Other objections have been disposed of orally. The judgment is affirmed.