(78 South. 470)

No. 21352.

CONGDON v. LOUISIANA SAWMILL CO., Limited.

(April 1, 1918.)

*(Syllabus by the Court.)*

1. MASTER AND SERVANT ⟶92(1)—MASTER'S EMPLOYMENT OF PHYSICIAN—NEGLIGENCE OF PHYSICIAN—LIABILITY OF MASTER.

Where an employer employs a physician or surgeon of ordinary skill and ability to attend to his employés, and pays the physician from a fund collected from the employés, and from which fund the employer derives no profit, he is not responsible in damages to an employé for mistakes of or malpractice by such physician; particularly, where it is not charged and proved that the employer was negligent in the selection of the physician.

2. MASTER AND SERVANT ⟶92(1) — LIABILITY OF MASTER—NEGLIGENCE OF PHYSICIAN —PETITION.

A petition for damages in such case should contain allegations of neglect on the part of the employer in employing a competent physician, and that he derived some profit from the fund contributed by the employés to pay the physician. In the absence of such allegations, the petition discloses no cause of action.

Appeal from Thirteenth Judicial District Court, Parish of Rapides; W. F. Blackman, Judge.

Action by George W. Congdon against the Louisiana Sawmill Company, Limited. From a judgment dismissing the action, plaintiff appeals. Affirmed.

Mims & Peterman and R. C. Culpepper, all of Alexandria, for appellant. Blackman, Overton & Dawkins, of Alexandria, for appellee.

SOMMERVILLE, J. Plaintiff sues to recover $5,000 damages against defendant, and, for cause of action, shows that, while he was in the employ of the defendant, a lumber company, he sought the medical aid of Dr. Broadway, "the sawmill physician of said company," to remove a wart that was on his back, and which had been, for some time, a source of annoyance to him; that, in endeavoring to remove the wart, said physician applied an acid carelessly, recklessly, and negligently; that he poured the acid on plaintiff's naked back, and it circled around his body, consuming skin and flesh in its course; that said physician, through negligence or lack of proper knowledge and skill, utterly failed to relieve petitioner.

Plaintiff further alleged:

"That, in this case, as was and had been customary with all the employés of said company, the said company retained out of petitioner's

wages a certain sum of money for the specific purpose of insuring medical aid and treatment for petitioner whenever it became necessary and expedient for him to have same; that, while the employés of the company contributed out of their wages and salaries earned by them, as employés of the company, or rather the same was withheld by the company for the purpose of establishing a fund to be used solely and exclusively by the company with which to employ a physician to look after the health of its employés and treat such of them as may apply to such physician for treatment, your petitioner had nothing whatever to do with the employment of such physician or of fixing his salary, but said fund was and is under the sole and exclusive management and control of defendant company, and the physician so employed by it is alone responsible to said company. He shows further that the said Dr. C. B. Broadway was regularly employed by and had his salary paid him by said defendant company, and had his office adjacent to the company's mill, and was at the time of said alleged injuries actually engaged in the discharge of his duties at his said office and acting within the scope of his employment as an employé of said company. Petitioner alleges that on the occasion above mentioned he called upon said physician at his office for the sole purpose of obtaining treatment from said sawmill physician, as he had a right to expect and to have from him as an employé of defendant company in consideration of petitioner's payment to the company or the company's retention of the medical dues from his wages as aforesaid."

To this petition the defendant filed an exception of no cause of action, which was overruled. The defendant answered, reserving the benefit of the exception.

The case went to trial on the merits, and it was decided in favor of defendant. Plaintiff has appealed.

The exception of no cause of action should have been sustained.

[1] Plaintiff does not allege that the defendant derived any profit from the employment of the physician employed by it, or out of the fund created for the purpose of paying the physician's salary. He does not allege that the defendant failed to exercise ordinary care in its selection of a physician to treat injured and sick employés. He does not even allege that Dr. Broadway, the physician selected by defendant, was an incompetent physician. These were necessary allegations to show cause of action by him against defendant.

Plaintiff seeks to hold defendant responsible solely and exclusively upon the theory that, where an employer raises, out of the wages of the employés, a fund, for the purpose of rendering medical aid and treatment to his employés and their families, and, acting as agent or trustee of this fund, employs a physician, the employer is responsible for any negligent act of surgical or medical attention by the physician to one of the employés, resulting in injury to the employé, even though the employer derives no profit out of his relation as agent of such fund, and even though the physician selected and retained by the employer is a competent physician.

The law applicable is well settled, by an almost unbroken line of decisions of this and other courts, to be the opposite of plaintiff's contention.

Under the decisions, the employer can be made to respond in damages in such a case only in the event that he fails to exercise ordinary care in the selection of the physician, or in the event that he derives a pecuniary profit out of the fund employed for hospital or medical purposes.

The only case decided by this court relating to the question here presented is Nations v. Luddington, etc., Co., 133 La. 657, 63 South. 257, 48 L. R. A. (N. S.) 531, Ann. Cas. 1916B, 471, wherein an employé was killed by the administration of chloroform by a layman with the knowledge and permission of the defendant, and where an immediate operation was unnecessary, and an assistant physician could readily have been procured to administer the chloroform; and there the court said:

"A condition of the employment contract at the defendant's mill was that the company should withhold weekly out of the wages of the employés a certain amount to go towards a fund for securing medical aid for the employés in case of need. The company itself contributed

no part towards the fund, but derived no profit therefrom, save perhaps in the betterment brought about thereby in its labor conditions. Beyond making this weekly contribution, the employés took no part in the procuring of the medical aid. The company retained that function in its own hands.

"This was a business arrangement between the parties; and a part of the company's understanding was to use due care in providing the employés with a competent physician, or with two if needed. The Supreme Court of Missouri, in the case of Phillips v. St. Louis, etc., R. Co., 211 Mo. 419, 111 S. W. 109, 17 L. R. A. (N. S.) 1167, 124 Am. St. Rep. 786, 14 Ann. Cas. 742, has held that the company in such a case must go beyond employing a competent physician; that it 'must go further and competently treat the patient.' But the weight of authority seems to be that:

"'Where an employer derives no profit from the retention of the hospital fund from its employés, it is liable only for failure to exercise ordinary care to select, employ, and retain a competent physician.'"

We might refer to a long line of decisions holding that:

"Where a master employs a surgeon for the benefit of its men and without profit to itself, it is not liable for the surgeon's malpractice in case it exercised reasonable care in the selection of a competent surgeon." Simon v. Hamilton Logging Co., 76 Wash. 370, 136 Pac. 361; Eastman, Gardiner & Co. v. Permenter, 111 Miss. 813, 72 South. 234; Engirbritson v. Tri-State Cedar Co., 91 Wash. 279, 157 Pac. 677; St. Louis, I. M. & S. R. Co. v. Taylor, 113 Ark. 445, 168 S. W. 564; Tippecanoe Loan & Trust Co. v. Cleveland, C., C. & St. L. Ry. Co., 57 Ind. App. 644, 104 N. E. 866, 106 N. E. 739; Guy v. Lanark Fuel Co., 72 W. Va. 728, 79 S. E. 941, 48 L. R. A. (N. S.) 536; Atlantic Coast Line R. Co. v. Whitney, 62 Fla. 124, 56 South. 937; Arkansas Midland R. Co. v. Pearson, 98 Ark. 399, 135 S. W. 917, 34 L. R. A. (N. S.) 317; Wells v. Ferry-Baker Lumber Co., 57 Wash. 658, 107 Pac. 869, 29 L. R. A. (N. S.) 426; (1900) Cummings v. Chicago & N. W. Ry. Co., 89 Ill. App. 199, writ of error dismissed (1901) 189 Ill. 608, 60 N. E. 51; Pittsburgh, C., C. & St. L. R. Co. v. Sullivan, 141 Ind. 83, 40 N. E. 138, 27 L. R. A. 840, 50 Am. St. Rep. 313; Maine v. Chicago, B. & Q. R. Co., 109 Iowa, 260, 70 N. W. 630, 80 N. W. 315; Louisville & N. R. Co. v. Foard, 104 Ky. 456, 47 S. W. 342, 20 Ky. Law Rep. 646; Haggerty v. St. Louis, K. & N. W. R. Co., 100 Mo. App. 424, 74 S. W. 456; Poling v. San Antonio & A. P. Ry., 75 S. W. 69, 32 Tex. Civ. App. 487; Big Stone Gap Iron Co. v. Ketron, 45 S. E. 740, 102 Va. 23, 102 Am. St. Rep. 839.

[2] Plaintiff, not having alleged that defendant was negligent in the selection of the physician cannot prove the neglect or malpractice by the physician, under the doctrine of respondeat superior, which he appears to invoke. Defendant was only bound to exercise reasonable care in selecting a surgeon of average skill.

In the case of Quinn v. Railroad, 94 Tenn. 713, 30 S. W. 1036, 28 L. R. A. 552, 45 Am. St. Rep. 767, it is said:

"Plaintiff in error insists that the defendant in error is liable for the mistakes or malpractice of the surgeons in question; that their employment by the railroad created the relation of master and servant; and that the ordinary rule, which makes the master liable for the negligent acts of his servant within the scope of his employment, is to be applied in this case. If he be correct in his contention that the relation between the railroad and these surgeons was that of master and servant, then his conclusion would properly follow. But was that the relationship? We do not think so. The term 'servant,' as it is used in connection with the rule invoked, has a well-defined meaning. It 'is applicable,' says Mr. Thompson, in his work on Negligence (volume 2, p. 892), 'to any relation in which, with reference to the matter out of which an alleged wrong has sprung, the person sought to be charged had the right to control the action of the person doing the alleged wrong; and this right to control appears to be the conclusive test by which to determine whether the relation exists.'

"'For the relation to exist, so as to make the master responsible, he must not only have the power to select the servant, but to direct the mode of executing, and to so control him in his acts in the course of his employment as to prevent injury to others.' Robinson v. Webb, 11 Bush [Ky.] 464. To the same effect is Mound City, etc., Co. v. Conlon, 92 Mo. 221 [4 S. W. 922]; Wiltse v. State, etc., Co., 63 Mich. 639 [30 N. W. 370]; Anderson v. Bordecker, 17 Ill. App. 213.

"The term 'master' is equally well defined in the law. A 'master,' in the sense of the rule, is 'one who has the superior choice, control, and direction; whose will is represented not merely in the ultimate result in hand, but in all its details; one who is the responsible head of a given industry; one who has the power to discharge; one who not only prescribes the duty, but directs, and may at any time direct, the means and methods of doing the work.' 14 Am. & Eng. Encyc. of Law, 745.

"If it be, as these authorities indicate (and it cannot be otherwise), that the decisive test of this relationship, or even one of its decisive tests, is that the master has the right to select the end of the servant's employment, and that the master's uncontrolled will is the law of the servant 'in the means and methods' by which this end is to be reached, then it cannot be

maintained that these surgeons were the 'servants' of this corporation. They were not employed to do ordinary corporate work, but to render services requiring special training, skill, and experience. To perform these services so as to make them effectual for the saving of life or limb, it was necessary that these surgeons should bring to their work not only their best skill, but the right to exercise it in accordance with their soundest judgment, and without interference. Not only was this the right of these surgeons, but it was as well a duty that the law imposed. If the railroad authorities had undertaken to direct them as to the method of treatment of the injured man, and this method was regarded by them as unwise, they would have been 'bound to exercise their own skill and better judgment, and to disobey their employers, if in their opinion the welfare of the patient required it.' Union Pac. Ry. Co. v. Artist (8 U. S. Cir. Ct.) 60 Fed. Rep. 365 [9 C. C. A. 14, 23 L. R. A. 581].

"In accordance with this view it has been uniformly held, so far as we have been able to discover, that, having selected surgeons skilled and competent in their profession, the corporation has discharged every duty that humanity or sound morals impose, and that it is to no extent liable for the mistakes they may subsequently commit."

To the same effect is the decision in Pittsburgh, etc., R. Co. v. Sullivan, 141 Ind. 83, 40 N. E. 138, 27 L. R. A. 840, 50 Am. St. Rep. 313, and the authorities therein cited.

Plaintiff failed to state a cause of action in his petition, and the exception thereto should have been sustained.

The judgment dismissing plaintiff's suit at his costs is affirmed.

O'NIELL and LECHE, JJ., concur in the decree.