144 So.2d 643 (1962)
Mrs. Alert Louise D'ANTONI
v.
SARA MAYO HOSPITAL and the Aetna Casualty and Surety Company.
No. 638.
Court of Appeal of Louisiana, Fourth Circuit.
July 2, 1962.
Rehearings Denied October 4, 1962.
Certiorari Denied November 27, 1962.
*644 Joseph E. Berrigan, Jr., Francis J. Demarest, Jr., and R. Louis Carruth, New Orleans, for plaintiff-appellee and appellant.
Adams and Reese, St. Clair Adams, Jr., New Orleans, for defendant-appellant.
Henry M. Robinson and Herbert J. Garon, New Orleans, for defendant and third-party plaintiff-appellee.
Before REGAN, SAMUEL and HALL, JJ.
LUTHER E. HALL, Judge pro tem.
This is a suit by Mrs. Alert Louise D'Antoni against Sara Mayo Hospital and The Aetna Casualty and Surety Company, its public liability insurer, to recover damages for personal injuries sustained by plaintiff as a result of falling from her bed in the hospital on August 4, 1958 at approximately 1:00 A.M.
Exceptions of no cause or right of action were filed on behalf of The Aetna Casualty and Surety Company on the theory that the right and cause of action herein are predicated upon alleged malpractice of Sara Mayo Hospital and that the comprehensive general liability insurance policy issued by Aetna to the hospital contained a malpractice exclusion clause. These exceptions were overruled, and Aetna filed a general denial and repeated its defense of no cause of action as to Aetna.
Exceptions of no cause or right of action were filed in behalf of Sara Mayo Hospital under the doctrine of immunity of charitable institutions and were overruled. Sara Mayo Hospital then filed an answer repeating its defense that no cause or right of action existed against the hospital, generally denying negligence on the part of the hospital, and further charging that the sole and proximate cause of the accident was the negligence of the plaintiff and, alternatively, that plaintiff was guilty of contributory negligence. In addition Sara Mayo Hospital filed a third-party action against The Aetna Casualty and Surety Company praying for judgment for whatever amount the hospital might be cast in the suit, and also praying for a further judgment against Aetna for attorney's fees, costs and expenses incurred by the hospital in defending the suit as a result of Aetna's *645 breach of contract by failing to defend on its behalf.
Judgment below was rendered in favor of the plaintiff against the Aetna Casualty and Surety Company in the sum of $25,000.00 plus interest and costs.
Judgment was further rendered in favor of the defendant Sara Mayo Hospital dismissing plaintiff's suit as to it.
Judgment was still further rendered in favor of the third-party plaintiff, Sara Mayo Hospital, against the third-party defendant, The Aetna Casualty and Surety Company, in the sum of $4,500.00 attorney's fees and $110.00 for expenses of the trial together with interest and costs.
The plaintiff appealed from that part of the judgment dismissing her suit against Sara Mayo Hospital, and The Aetna Casualty and Surety Company appealed from the judgment against it in favor of the plaintiff and also from the judgment against it in favor of Sara Mayo Hospital.
The record shows that plaintiff was admitted to Sara Mayo Hospital as a patient on July 25, 1958. At approximately 1:00 A.M. on the morning of August 4, 1958 she fell from the left side of her bed and sustained a fracture dislocation of the left ulna, an impacted fracture of the left radius, and an intertrochanteric fracture of the left femur.
Plaintiff contends that the hospital was negligent in not maintaining the side rail in place on the left side of the bed, and that this failure was the proximate cause of the accident.
When plaintiff was admitted to the hospital a notation was made on her admit card that she was 62 years old, that she had cirrhosis of the liver and that she suffered from tonic-clonic jerkings and epileptic and psychomotor seizures that were sudden and unpredictable in onset. Her attending physician, Dr. Bernard Richmond, testified that he ordered side rails to be placed and maintained on her bed at all times. He also ordered that oxygen be administered initially and then be kept available for immediate use.
Dr. Richmond further testified that plaintiff was semi-lucid; that when he visited her he would have to shake her to arouse her; that she could answer questions put to her but would suddenly lapse into sleep.
Plaintiff was receiving injections of sodium luminal, three grains, four times a day during her early hospitalization; but at the time of the accident she had improved and was receiving only one injection of sodium luminal, two grains, at bed time.
The record shows that in accordance with the doctor's orders side rails were attached and maintained on each side of the patient's bed, but that in order to administer oxygen to the patient the side rail on the left of the bed was lowered and the nurse on duty failed to raise it when the oxygen tent was removed. There is testimony to the effect that oxygen may be administered without lowering the side rail.
On the night of the accident plaintiff's daughter was in the room with her, either sound asleep or dozing in a chair. Plaintiff had received an injection of sodium luminal at 9:30 P.M. and when the nurse on duty visited the room at 12:30 A.M., just one-half hour prior to the accident, the left side rail was down and the patient was asleep. The nurse did not raise the side rail.
It is questionable if anyone saw the patient fall. The daughter's testimony is so filled with contradictions that it is of little value. Plaintiff testified that she did not remember being admitted to Sara Mayo Hospital and remembered nothing of her stay there. However her daughter signed a statement for an insurance investigator to the effect that the plaintiff had advised her the following day after the accident that she was attempting to go to the bathroom because no one had responded to the signal light.
*646 Assuming this to be true, we are of the opinion, as was the trial judge, that had the side rail been in proper position a sick and elderly woman such as the plaintiff would have been restrained by the side rail from attempting to get out of the bed by herself.
Considering the plaintiff's age and her semi-lucid condition and the fact that she was under sedation the entire time she was in the hospital (even though she had improved and the dose had been reduced) we do not believe that her action in attempting to get out of bed (if such be the case) amounted to negligence on her part.
We are of the opinion that the hospital attendants and nurses were negligent in not maintaining the side rails in place at all times in accordance with the doctor's orders, and that the absence of the side rail was the proximate cause of the accident.
Since the doctrine of immunity of charitable institutions obtains in this state and since the record abundantly shows that Sara Mayo Hospital is entitled to the benefit of that doctrine, no judgment can be rendered against it. See Nations v. Ludington, Wells and Van Shaick Lumber Co., 133 La. 657, 63 So. 257, 48 L.R.A.,N.S., 531; Congdon v. Louisiana Sawmill Company, 143 La. 209, 78 So. 470; Jordan v. Touro Infirmary et al., La.App., 123 So. 726; Jurjevich et al. v. Hotel Dieu, La. App., 11 So.2d 632; Thibodaux v. Sisters of Charity of Incarnate Word, 11 La.App. 423, 123 So. 466.
However, the defense of charitable immunity is personal to the hospital and is not available to the hospital's public liability insurer. See Rome v. London & Lancashire Indemnity Co. of America, La. App., 169 So. 132; Messina v. Societe Francaise de Bienfaissance etc., La.App., 170 So. 801; Lusk v. United States Fidelity & Guaranty Co., La.App., 199 So. 666.
The Aetna Casualty and Surety Company has reurged before us its exception of no right or cause of action which was overruled by the trial court. Aetna argues that the pleadings show that plaintiff's suit was predicated upon acts of malpractice which were excluded under an endorsement on the comprehensive general liability policy issued by it to the hospital. This endorsement is entitled "Exclusion of Malpractice and Professional Services", and reads in part as follows:
"It is agreed that, as respects any classification stated below, the policy does not apply to injury, sickness, disease, death or destruction due to:
"(1) the rendering of or failure to render
"(a) medical, surgical, dental, x-ray or nursing service or treatment, or the furnishing of food or beverages in connection therewith
"(b) any service or treatment conducive to health or of a professional nature or".
Aetna directs our attention especially to Article 12 of plaintiff's petition which in its opinion alleges only acts of malpractice. We find no necessity for quoting Article 12 in full. We find among the acts of negligence charged therein, the following:
"(3) Failure to put the side rail back up along the side of petitioner's bed, from which she fell, after oxygen had been administered to her."
In our opinion the action of the hospital's employees in not maintaining the side rails on plaintiff's bed did not involve professional judgment and was not a "failure to render medical * * * or nursing service or treatment" nor was it "failure to render any service or treatment conducive to health or of a professional nature".
It seems to us that in determining whether or not a particular act or failure to act is of a professional nature we should look not to the title or the character of the party performing the act but to the act itself. The raising of the side rail was purely a *647 mechanical act which any unskilled person could perform. It certainly requires no professional training or knowledge. The side rails were not a part of the patient's treatment per se since she could have recovered without them. They were simply a safeguard to provide her with a safe place to stay and were not a "service or treatment conducive to health" any more than a safe floor to walk on would be. Neither was the maintaining of the rails a nursing service since the placing of the rails could be performed by anyone without the slightest nurses' training. While the initial decision to attach the side rails to the bed may have involved professional judgment, once the attending physician issued the order the professional aspect of it was complete. The placing and maintaining the rails in position was purely mechanical. See Ranelli v. Society of New York Hospital, Sup., 49 N.Y.S. 898; Pivar v. Manhattan General Inc., 279 App.Div. 522, 110 N.Y.S.2d 786; New Amsterdam Casualty Co. v. Knowles, 95 So.2d 413 (Fla.); Norways Sanatorium Inc. v. Hartford Accident & Indemnity Co., 112 Ind.App. 241, 41 N.E.2d 823, 44 N.E.2d 192.
We are of the opinion that Aetna's exception of no cause of action was properly overruled and that Aetna was properly held liable to the plaintiff on the merits.
We have now to consider Aetna's appeal from the judgment against it for attorney's fees and costs incurred by the hospital in defending this suit.
Under the terms of the policy issued by it Aetna was obligated to defend any suits against the hospital on account of injuries embraced within the coverage of the policy. Aetna refused to defend the hospital in this suit on the ground that its policy of insurance excluded coverage for the acts alleged to have caused the injuries. Aetna argues that the allegations of plaintiff's petition govern the duty of an insurer to defend the petition, citing Foreman v. Jordan, La. App., 131 So.2d 796, and that the acts of negligence alleged in this case clearly fall within the malpractice and professional services exclusion. In Demandre v. Liberty Mutual Insurance Company, 264 F.2d 70 the United States Fifth Circuit Court of Appeal held that whether or not the act was one of professional or non-professional character is a question of fact to be determined after hearing the evidence. The hospital has cited several other cases to the same effect, but we find no necessity for exploring this field since in considering Aetna's exception of no cause of action we reached the conclusion that the petition does allege acts which would oblige the insurer to stand in judgment in the shoes of the hospital.
In our opinion Aetna breached its contract to defend the hospital and is liable to it for attorney's fees and expenses. The district judge allowed $4,500.00 for attorney's fees and $110.00 for expenses. The worth of the services was fully proved and the judgment therefor will not be disturbed.
Finally we come to the question of the amount of the judgment rendered in favor of the plaintiff. The Aetna Casualty and Surety Company urges that the amount is grossly excessive.
Plaintiff's injuries consisted of a fracture dislocation of the left ulna, an impacted fracture of the left radius, and an intertrochanteric fracture of the left femur. After her fall she was treated for these injuries for two weeks in Sara Mayo Hospital then she was transferred to Charity Hospital where she spent an additional eight weeks. Thereafter she was confined to her bed at home for approximately a year and a half, being visited weekly by her private physician, and receiving periodic treatment at Charity Hospital being transported to and from the hospital in an ambulance. Plaintiff could not walk at all for approximately a year. Her left arm is misshapened and has lost all usefulness. Her attending physician testified that this condition is permanent. She still suffers from pain and is still receiving treatment *648 at Charity Hospital. Plaintiff was put in traction at Sara Mayo Hospital, the weights being attached to her leg by adhesive tape which caused the skin on her leg to slough off and she developed sores which became infected. She still bears scars from these sores. When she was removed to Charity Hospital she was again put in traction; the weights being attached by means of metal pins inserted into the bones of the knee. She was in a cast the whole period of her hospitalization.
The District Judge had ample opportunity to observe the plaintiff and to evaluate her injuries. Apparently he was convinced that she was subjected to much pain and suffering and the record in the case sustains him. Plaintiff's medical expenses amounted to $1,304.35. Under the circumstances of this case we do not believe that a judgment in the amount of $25,000.00 is excessive.
For the foregoing reasons the judgment appealed from is affirmed.
Affirmed.