BARHAM, Justice
(Concurring in Part •and Dissenting in Part).
The majority, citing only Court of Appeal cases and apparently relying entirely upon them, has decided that the law of Louisiana makes eleemosynary institutions immune from liability for the delicts of their servants. The majority cites no constitutional, codal, or statutory authority or Supreme Court jurisprudence for such law, hut states nevertheless that “ * * * if any change is to be effected in the law, it should be made by the legislative and not the judicial department”. I believe that Civil Code Articles 2315, 2316, and 2320, which assign responsibility to respond in damages for one’s fault or for the fault of certain others,[1] govern, and that therefore the law of Louisiana is clear and contrary to the majority holding. The law being express, the Court of Appeal could not resort to a determination based upon equity under Civil Code Article 21.[2]
There is no foundation in civil law for the doctrine of charitable immunity as pronounced by the cited Court of Appeal cases and in certain common law states. So far as I have been able to ascertain, the doctrine is not accepted in any foreign jurisdiction, civilian or common law, and though once perhaps a majority view in the United States, it is now a fast waning and dwindling minority theory. It had an inauspicious and not too reputable beginning in the United States in a case arising in Massachusetts in 1876, McDonald v. Massachusetts General Hospital, 120 Mass. 432, 10 years after the repudiation of the doctrine in England.[3] Although the doctrine has been embodied into law in many states, voluminous opinions in the various jxxrisdictions have vainly attempted to find a logical rationale for it.
*229 While it should be sufficient to state that the doctrine of charitable immunity is not the law in the State of Louisiana, there being express codal provisions to the contrary and no statutory authority or Supreme Court jurisprudence to support the exception from liability, it may be interesting and perhaps worthwhile to note the “origin and growth” of the doctrine in Louisiana.
In two early cases involving lumber companies which collected dues or fees from their employees to secure medical care for these employees, this court considered a master-servant relationship of the doctor to the company.[4] Although language and common law citations from these cases are cited by later appellate decisions, neither of these cases is authority for the doctrine of charitable immunity in Louisiana.
The existence of the doctrine in Louisiana, according to the appellate jurisprudence, rests upon the 1922 case of Jordan v. Touro Infirmary, 123 So. 726 (La.App.Orl.). If this be so, the doctrine is as stable as an inverted pyramid of large stones resting upon a single pebble. The Jordan case, attempting to absolve from liability the same defendant as in the instant case (then itself an “indigent” hospital for the indigent), first gives a statement of facts from which it is difficult if not impossible to find the negligence required in malpractice suits. Then, after a discussion of the master-servant doctrine, it concludes that the nurses,, including the one alleged to be negligent, •were not servants of the hospital but were to be considered “ * * * pro ■ hac vice, as the servants of the surgeon”. After this-positive legal holding and an irrelevant discussion of common law holdings on charitable immunity, 'that case states in dictum that a charitable hospital cannot be held responsible for the negligence of its nurses.
The majority has indicated that our refusal of certiorari has “ * * * inferentially, if not directly, * * * sanctioned the doctrine * * * ”. In Jordan v. Touro, supra, we refused writs with the comment: “The decree is correct.” There are few weaker affirmations of appellate decisions, for such a refusal adopts no language, reasoning, or law in the case, but sanctions only the decree. That decree can be supported by the factual statement and the court’s holding that the nurses were the servants of the surgeon.
A number of later cases, all in the Courts of Appeal, often in dicta, found authority in Jordan for charitable immunity.[5] While our Courts of Appeal have attempted to create charitable immunity out of dictum, *231 common law, and disregard for positive codal provisions, this court has never, by inference or otherwise, adopted this doctrine.[6] The refusal of writs by this court which is usually based upon incomplete records and ex parte applications and without hearing, is not decisional law. This court’s action upon writs may be indicative of a predisposition on a certain legal issue but is not necessarily determinative of that issue. I will not, and this court should not, be bound by its refusal of writs to adopt law expressed in appellate court opinions, although we may well adopt such a case holding as law when, upon a full hearing, we find it supported by positive law, or, in the absence of positive law, supported by reason and logic or natural law.
In the states which still retain the charitable immunity or “trust fund” doctrine or vestiges of it, jurisprudence advances what appears to me to be illogical and irrational theories for the invoking of such an exception to the usual application of vicarious liability. Our Courts of Appeal, in an attempt to find some philosophy for the doctrine, have vacillated between such theories as “trust fund”, public policy, quasi-governmental functions, and waiver. Charitable immunity, although apparently created as a public policy to encourage charities, actually violates the general public policy because it affords great protection to trust funds and certain other properties, thus favoring property rights over personal rights.
The doctrine in Louisiana and in these other states has been mutated, warped, and excepted from so that there is no semblance of uniformity or consistency in the extent and nature of the immunity granted elee *233 mosynary institutions. In Louisiana it has been held in these appellate court decisions -that paying recipients of services and nonpaying recipients of services are equally -without remedy, but that third parties, visitors, licensees, and in general all those who ■do not pay for the services of, or receive ■charity from, the institutions are not affected by this limitation. Thus, ridiculously and •ironically, upon registering and entering a .so-called "charitable” institution, one is at the mercy of the negligent employees of that institution, though one pays reasonable or even exorbitant fees for services; yet after discharge, if one slips and falls between the discharge desk and the exit due to an employee’s negligence, he is allowed to recover fully for his damages. Or perhaps I have overstated the possible future .application and the “charitable” institution will be liable for injuries occurring only after one has left the premises, as, for example, if a vehicle owned by that institution and driven by its employee negligently strikes and injures him.
The writers in Louisiana have uniformly criticized the Court of Appeal decisions which have grafted the erroneous common law doctrine onto our express and well defined law governing responsibility in this area.[7] It may be safely said that the overwhelming view of all of the authorities and writers rejects the doctrine as being unsound in theory and in application. As in many other common law states, in 1951 the Supreme Court of Mississippi overruled prior decisions and repudiated the doctrine in the well reasoned landmark case of Mississippi Baptist Hospital v. Holmes, 214 Miss. 906, 55 So.2d 142, 56 So.2d 709, 25 A.L.R.2d 12.[8]
In a civilian jurisdiction such as ours, where we are bound to follow the positive law, decisional law should not supplant legislative or constitutional authority. However, when decisions are pronounced by the highest court of this state and property rights are vested or the pronouncement has been repeated or relied upon so as to become “jurisprudence constante”, these decisions carry great weight and are most often determinative of similar issues. As previously noted, the express relevant law is contained in our Civil Code, and would reject the theory of charitable immunity. We must not fall into error because of prior Court of Appeal cases which have attempted to establish law contrary to the Code. This is a case of' first instance for us, and it is not only our prerogative, it is our mandate to determine it as res nova. This is a judicial and not a legislative responsibility. If we discharge our responsibility and follow the law, we are bound to *235 declare that the defendant Touro Infirmary is liable for the negligence of its servants who were acting within the course of their employment.
I must dissent also from the majority holding that Hardware Mutual Casualty Company is liable under its general liability insurance policy covering Touro. The exclusionary clause which must relieve the company from responsibility is:
“Exclusion of Malpractice and Professional Services
“1 — It is agreed that as respect any classification stated below, the policy does not apply to injury, sickness, disease, death or destruction due to
“A — -The rendering of or failure to render
“1 — Medical, surgical, dental, x-ray or nursing service or treatment, or the furnishing of food or beverages in connection therewith:
“2 — Any service or treatment conducive to health or of a professional nature; or
“3 — Any cosmetic or tonsorial service or treatment;
“£ — -The furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances; or
“C — The handling- of or performing of autopsies on dead bodies.” (Emphasis supplied.)
I have read the majority opinion carefully and note its reliance upon the same Court of Appeal cases which created “charitable immuniity” for support in interpreting this clause in a manner that imposes liability upon the hospital’s insurer. The majority has finally concluded that the services of specially trained surgical nurses on duty in an operating room during abdominal surgery are not professional or nursing services. If the majority can show me that this record supports this finding,, or that it is the practice of any reputable hospital to allow the use of a “non-professional” staff in rendering the services which the nurses in the instant case performed, I will gladly concur in its result. The conclusion is inescapable that the services here rendered were “medical, surgical”, “or nursing service or treatment” “conducive to health or of a professional nature”.
I agree that the surgeon is either negligent or vicariously responsible, and that New Amsterdam Casualty Company, the surgeon’s insurer, is liable; but I find, contrary to the majority, that Touro is solidarily bound with this other defendant for the fault of the nurses as its servants also. I would, however, dismiss Hardware Mutual Casualty Company from the suit under the clear and unambiguous exclusionary clause in its liability insurance policy.
I therefore concur in part, and respectfully dissent in part.

.These articles read:
“Art. 2315. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
“Art. 2316. Every person is responsible for the damage he occasions not mei'ely by his act, but by his negligence, his imprudence, or his want of skill.”
“Art. 2320. Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.

. Article 21 px’ovides: “In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent.” (Emphasis supplied.)

. An English case, Heriot’s Hospital v. Ross, 12 Clark & F. 507, 8 Eng.Reprint 1508 (1846), espoused a “trust fund” doctx-ine in dictum, which was followed by several cases until repudiated 20 years later in Mersey Docks v. Gibbs, 11 H.L. Cas. 686, 11 Eng.Reprint 1500 (1866).

. Nations v. Ludington, Wells & Van Schaick Lumber Co., 133 La. 657, 63 So. 257, 48 L.R.A.,N.S., 531 (1913) ; Congdon v. Louisiana Sawmill Co., Ltd., 143 La. 209, 78 So. 470 (1918).

. Demien y. Y.M.C.A., 5 Peltier’s Orl.App. 11 (1922); Foye v. St. Francis Sanitarium, 2 La.App. 305 (2nd Cir. 1925) (dictum); Thibodaux v. Sisters of Charity, 11 La.App. 423, 123 So. 466 (2nd Cir. *231 1929) (amazingly applying the rule of stare decisis); Bougon v. Volunteers of America, 151 So. 797 (La.App.Orl.1934) (dictum) ; Messina v. Soeiete Franeaiso de Bienfaissance, etc., 170 So. 801 (La. App.Orl.1936) (dictum) ; Jurjevich v. Hotel Dieu, 11 So.2d 632 (La.App.Orl. 1943) (which, after finding the doctrine firmly established, theorizes that “ * * * to the extent that such institutions administer to the indigent sick, they are discharging governmental functions * * * ”) ; D’Antoni v. Sara Mayo Hospital, 144 So.2d 643 (La.App.4th Cir. 1962); Hill v. Eye, Ear, Nose & Throat Hospital, 200 So.2d 34 (La.App.4th Cir. 1967) (wherein it should be noted that without any finding or reference to charitable services the court concludes that' “ * * * hospitals are regarded as charitable organizations entitled to immunity from suit”). But see Stanley v. Schumpert, 117 La. 255, 41 So. 565, 6 L.R.A.,N.S., 306 (1906), wherein this Supreme Court specifically held a hospital liable and responsible for the negligence of a nurse who applied alcohol to the patient’s eye instead of the proper solution. Danks v. Maher, 177 So.2d 412 (La.App.4th Cir. 1965), seems to rationalize that the Supreme Court case of Stanley v. Sehumpert, which never considered charitable immunity, was differentiating between administrative and professional acts of the nurses, and that case relied upon Stanley as a basis for its holdings. Finally, see Humphreys v. McComiskey, 159 So.2d 380 (La.App.4th Cir. 1964).

. Writs have been applied for and considered only in the Jordan, Messina, D’Antoni, and Jurjevich cases. In each of these a qualified denial of writs was made.

. 17 Tulanc L.Rov. 621, an excellent comment by Robert McLean Jeter, Jr.; 26 Tulanc L.Rev. 396; 32 Tulanc L.Rev. 138.

. See complete discussion in that ease, and the Annotation in 25 A.L.R.2d at pp. 29 et scq.