### No. 2112.
Second Circuit Appeal

---

### WILLIAM A. GRISHAM v. WRAY-DICKINSON CO., INC.

---

(October 31, 1924, Opinion and Decree.)
(January 19, 1925, Rehearing Refused.)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Master and Servant —Par. 160 (g).**
Payments under the Employers' Liability Act No. 20 of 1914, as amended, are in the nature of admissions that the employee is entitled to compensation under the act. This, under Section 31, is sufficient to interrupt prescription.

2. **Louisiana Digest—Master and Servant —Par. 159 (a).**
Where the injuries sustained while unloading a sedan body of an automobile

and later while cranking an automobile were either caused entirely by these accidents or were superinduced thereby, the conclusion must be that the accident caused directly or indirectly the injuries (hernia) complained of. This is true, notwithstanding the fact that, any possible dormant trouble caused by reason of adhesions having formed was greatly and suddenly, as well as violently, aggravated and accelerated by the said accident. The employee can recover under Section 8, Subsec. 1 (c) of Act 20 of 1914 as for partial disability.

(Note: The present amendment is Act No. 216 of 1924. Editor's note.)

Appeal from the First District Court, Parish of Caddo, Hon. E. P. Mills, Judge.

This is a suit under the Employers' Liability Act to recover compensation.

Judgment for defendant and plaintiff appealed.

Judgment reversed.

Thomas W. Robertson of Shreveport, attorney for plaintiff and appellant.

Barnette & Roberts, Thatcher & Webb, of Shreveport, attorneys for defendant and appellee.

CROW, J. Plaintiff, an automobile mechanic of several years' experience, was employed by defendant in its garage and repair plant in the City of Shreveport on May 7, 1921. On some day in August, 1921, while performing services arising out of and in course of his said employment, plaintiff claims to have sustained an injury to his right side, which, in his testimony, he described substantially as follows.

He and others were unloading a sedan body, weighing from 300 to 500 pounds, and while carrying it one of the other co-laborers stumbled and let the body down on the side, and plaintiff could not turn it loose and let it down, whereupon the body slipped down on him and hurt his side, making him so sick he had to go off and sit down. He said "felt like it tore something loose in-side." He either was sent by defendant, or went of his own accord to Drs. Willis, Knighton, Garrett and Willis, and was told by Dr. Willis, Jr., that he would have to be operated on as soon as he rested up. Later he returned and was operated on by Dr. Garrett, who said plaintiff had a small hernia and adhesion of the intestines in the region of the appendix.

After the above operation, plaintiff went back to work for defendant in about three months from the operation, and worked until he was again injured, in June, 1922, and again in August, 1922, by cranking a Ford car. The latter time plaintiff was "knocked out", so to speak, and was carried in an unconscious condition to a sanitarium. He was then examined by Dr. Pirkle, who advised that an X-ray picture be made of plaintiff's stomach and intestines. Accordingly, Dr. Barrow, an X-ray specialist, made an X-ray photo of plaintiff's stomach and intestines which, according to Dr. Barrow's interpretation, showed the stomach and small intestine normal, and showed in the large bowel (ascending colon) "a point of adhesion bound across the lower end of the cecum," the "beginning of the large bowel".

After the making of an interpretation of the X-ray photo by Dr. Barrow, plaintiff was operated on by Dr. Pirkle, who, in his testimony, says:

Q. "What condition did you find?"

A. "I found that he had been previously operated upon. Had a scar in his right side. * * * I found an adhesion across the lower end of the large intestine—might say the upper end on the right side a little from the upper end or beginning, and I also found the omentum adherent to this spot."

Q. "What—in the language of the ordinary layman—what do you mean by the omentum?"

A. "It is an apron or divide, something like that apron which hangs down over the intestines. It is really a protection or sheet of fat that protects the intestines and ordinarily it is attached to one side and one side is free and floats around at liberty; but in this particular case the lower end of this was adherent to this side of the old operation."

Plaintiff was out for about three months from the latter operation, and then returned to defendant, where he was given light work, such as inspecting cars and seeing them properly assembled, until about March 20, (or 30,) 1923, when he was relieved of his job, and compensation which defendant had been paying him stopped. On June 18 1923, this suit was filed for compensation as for permanent total disability; that is, for compensation at the rate of $18.00 per week for and during a period of 400 weeks He also sued for $250.00 additional for medical and hospital expenses incurred by reason of said accidents and resulting injuries.

Plaintiff alleged, and defendant admitted in its answer, that defendant had paid plaintiff compensation in sums of $153.50 on May 22, 1922, and $35.64 on July 29, 1922.

Defendant's answer is a general denial except certain admissions pertaining to plaintiff's employment, the payments above indicated, etc. There was no special defense set up in the answer. In this Court defendant has filed a plea of prescription of one year in bar of plaintiff's right of action.

The case was tried in the District Court, and there was judgment rejecting the demands of plaintiff. Plaintiff has appealed to this Court.

## OPINION

The plea of prescription cannot avail defendant, since defendant admitted in its answer that it had made a payment to plaintiff on his claim for compensation on July 22, 1922, and this suit was filed on June 18, 1923, less than a year after the said payment was made. Section 31 of Act 20 of 1914, provides that limitations under the Act shall not take effect until the expiration of one year from the time of making the last payment, the plea of prescription is therefore over-ruled.

We are at a loss to see how the Judge of the lower court rejected the demands of plaintiff entirely, since it is plain, from the evidence as a whole, that plaintiff's injuries were caused either entirely by the accidents complained of by him and which happened while he was performing services arising out of and incidental to his employment in the course of his employer's business, or else any dormant diseased condition he may have had was most certainly augmented and accelerated by those accidents, which were the direct and proximate cause of his disability.

The Supreme Court of this State, in the case of Behan vs. John B. Honor Co., Ltd., reported in the 143 La. 348, 78 South. 589, and in Craft vs. Gulf Lbr. Co., 151 La. 281, 91 South. 736, among other things, said:

"The fact that an employee, injured in performing services arising out of or incidental to his employment in the course of his employer's occupation, was already afflicted with a dormant disease that might some day have produced physical disability, is no reason why the employee should not be allowed compensation, under the employer's Liability Statute, for the injury which, added to the disease, superinduced physical disability."

And again, in the case of Hicks vs. Meridian Lbr. Co., 152 La. 975, 94 South. 903, the Supreme Court of this state said:

"Where the accident is the immediate cause of death, it is immaterial under the workmen's Compensation Act, whether or not the employee be or be not peculiarly subject to have such accident befall him, or to suffer therefrom more than another

differently situated; the sole question being whether the accident was the immediate cause of the injury." Fox vs. United Chemical & Organic Products Co., 147 La. 865, 86 South. 311.

In the case of Hicks vs. Meridian Lbr. Co., 152 La. 975, 94 South. 903, cited supra, a case very similar to the one at bar, and which was followed by this court recently in the case of Tullier vs. Phaneuf, No. 1971 on the docket of said later court, the Supreme Court, inter alia, said:

"(1) It is quite immaterial for the purposes of this case whether the alleged strain brought on the aneurism, or merely hastened the inevitable rupture; for this court would allow compensation in either case."

"In Craft vs. Lumber Co., 151 La. 281, 285, 91 South. 736, 737, we allowed compensation although we were strongly persuaded from the evidence that at the time the plaintiff received the blow in the lower part of the abdomen, he had a hernia in process of development, which was quickened and greatly accelerated by the blow he received."

Apparently, about the only defense relied on, and one, by the way, which was not pleaded in the answer, by defendant, is that plaintiff had had an operation on November 9, 1920, at the Northeast Mississippi Sanitarium at Booneville, Miss., for acute appendictis, and that adhesions had formed on the intestines as a result of said operation, and that plaintiff's disability was caused by reason of said adhesions.

The facts on that point, as disclosed by the record, succinctly stated, are:

Plaintiff had worked for several years as an automobile mechanic for a concern in Tupelo, Miss., where he is shown to have borne a good reputation for truth and honesty, and for being a robust and healthy man (excepting, of course, the attack of appendicitis, aforesaid); that on November 9, 1920, he was operated on for acute appendicitis by Dr. W. H. Sutherland, Superin-tendent of the Northeast Hospital at Boone-ville, Miss., who testified that plaintiff had had the acute attack of appendicitis twenty four hours, and had had several mild attacks before, and that, "on removal (of the appendix) there was no pus formation, no drain was put in and he healed by first intention." He also testified that "there was no suppuration," and that "he was closed without drain and recovered without any trouble." He further testified that plaintiff was examined by him on November 19, 1920, and that he saw plaintiff after the operation, and the latter never made any complaint and returned to his usual work.

Plaintiff testified and is corroborated in his testimony by several of his former neighbors in Mississippi, that he had been in good health and working regularly till operated on by Dr. Sutherland on November 9, 1920, a short time after which he went back to work apparently a well man and continued to do the same sort of work as an automobile mechanic that he had done before the said operation and without experiencing any difficulty, and without any seeming ill effects from the appendicitis and the operation by Dr. Sutherland. He continued that work in Mississippi till about May 1st, 1921, when he came to Shreveport and was employed by defendant on May 7th, 1921. He worked for defendant as automobile mechanic without difficulty and without showing any signs of weakness or disability on account of his said operation by Dr. Sutherland. This condition of his continued till some time in August, 1922, when he was hurt by the sedan body falling on him. He then had to be operated on for hernia and adhesions, so says Dr. Garrett, who performed the operation on him. There is nothing to show that plaintiff had ever suffered from hernia in any form until he sustained the injuries complained of when the body of the sedan fell upon him and he was hurt.

Even taking Dr. Garrett's testimony alone, which is seemingly as favorable to defendant as any testimony in the record, and plaintiff is bound to recover compensation of defendant; for, in answer to a question propounded by plaintiff's counsel on cross-examination, in hypothetical form based on the proven facts in the case, Dr. Garrett, (speaking of plaintiff's condition when he operated on him) said:

"To be sure, automobile had something to do with it."

After apparently recovering from the latter operation, plaintiff was given work by defendant, but was again hurt in June, 1922, which neccesitated another operation. Dr. Willis, Jr., testified that his firm operated on plaintiff for the breaking up of adhesions formed from cranking a Ford car, "and hernia, both together."

Plaintiff was then put back to light work and was hurt again while cranking a Ford car, while discharging his duties as mechanic for plaintiff. The last injury was sustained in August, 1922. He was then operated on by Dr. Pirkle for adhesions to the omentum and cecum as outlined above. Dr. Pirkle says in his testimony:

"My opinion at the time of the operation was that this adhesion being fixed, whenever he got himself in an undue position, that he pulled this adhesive band and it pulled on his intestines and made these symptoms that he complained of, which was weakness and sick stomach and 'knocked clear out,' so to speak. It was my opinion that this adhesive band was the cause of that. That was my conclusion of that breaking feature."

The only testimony in the record that plaintiff ever suffered from a pus or ruptured appendix, is that given by Dr. Willis, Jr., and his associate, Dr. Garrett, who say that when plaintiff first came to them, or was sent to them by defendant, he told them that he had been operated on for such condition. Plaintiff denies making those statements most positively, and it is possible that the doctors were thinking of some other of the many patients they are called upon to operate on. Or even if plaintiff did say so, it is likely he (being uneducated) did not understand what the doctors meant when questioning in regard to the history of his case. Anyway, Dr. Sutherland testifies positively, and apparently without hesitation or interest, that there was no ruptured or pus appendix and no suppuration, and no drain when he operated on plaintiff. It was a complete and uneventful recovery, so it appears, from Dr. Sutherland and other witnesses for plaintiff.

There is little or no doubt in our minds that the injuries plaintiff sustained were either caused entirely by the accidents complained of, or were superinduced thereby, and that any possible dormant trouble caused by reasons of adhesions having formed, was greatly and suddenly, as well as violently, aggravated and accelerated by the said accidents. The hernia which he had immediately on the happening of his first accident, evidently resulted from the sedan falling on him. The doctors all seem to agree that a sudden or violent strain or trauma may cause hernia. There is no evidence that he ever had the slightest indication of any hernia until the said accident. No other reasonable conclusion can be reached than that the accident caused, directly or indirectly, the hernia complained of.

After the last accident and operation in August, 1922, plaintiff was given light work by defendant till March 20th, (or 30th) 1923, when he asked for a settlement on his claim for compensation, when defendant fired him, since which time he has not been able to do much. He says he has been earning from five or six dollars a week to

eighteen or twenty dollars a week. Plaintiff was paid $153.50 on May 22, 1922, and $34.64 on July 29, 1922, by defendant, "Payments under the Employers' Liability Act are," so says the Supreme Court in the case of Johnson vs. Vernon Parish Lbr. Co., 151 La. 63, "In the nature of admissions that the employee is entitled to compensation under the Act."

Plaintiff lost three months from total disability after one injury, and five weeks after another, which makes a total of at least eighteen weeks during which he was totally disabled. For that, he should receive compensation at the rate of 60 per centum of his wages, say, $16.00 a week for eighteen weeks; and since that time we find he has been partially disabled to do work of a reasonable character, for which he should receive compensation at the rate of 60 per centum of the difference between the amount of his weekly wages at the time of the last accident ($35.00) and the amount of wages he was and is capable or receiving subsequent to the last accident. Plaintiff says he can earn from $5.00 or $6.00 to $18.00 or $20.00 a week. Averaging those amounts, we get approximately $12.00 a week he is able to earn since the accident, and since being laid off by defendant. Subtracting $12.00 from $35.00 we get $23.00, sixty per centum of which is $13.80.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the District Court be, and it is hereby reversed and set aside; and it is now ordered, adjudged and decreed that plaintiff have and recover of defendant, compensation at the rate of $16.00 per week beginning January 15, 1922, and continuing for a period of eighteen weeks, and further compensation as for partial disability at the rate of $13.80 per week, beginning August 15, 1922, and continuing for and during the period of such disability, not to exceed 300 weeks; less credits of $153.50 paid May 22, 1922, and $35.64, paid July 29, 1922, the said weekly payments to bear interest at the rate of five per cent per annum from maturity thereof till paid, defendant to pay all costs of both courts.