**WILLIAMS et al. v. CITY OF SHREVEPORT.**

No. 4287.

Court of Appeal of Louisiana. Second Circuit, Second Division.

June 11, 1932.

Smith & Greene, of Shreveport, for appellants.

A. M. Pyburn, of Shreveport, for appellee.

TALIAFERRO, J.

Fronie Williams, as the surviving widow of Lee Williams, and for her three minor children, instituted this suit against the city of Shreveport to recover compensation for the death of said husband, who, she alleges, died of injuries to him while discharging the duties of his employment with said city.

Defendant denies any liability to plaintiffs, and denies that deceased's death was due to injuries received by him while in its employ, but contends that he died of syphilis.

The court below rejected the demand of plaintiffs and dismissed their suit. A new trial was granted upon plaintiffs' motion, and after second trial plaintiffs' suit was again dismissed and their demand rejected. They appealed.

Plaintiffs allege, and it is established by the testimony, that Lee Williams, while discharging the duties of his employment to the city on March 24, 1929, was injured. The tibia and kneecap of his right leg were fractured. He was confined to bed for about eight weeks on account of these injuries and resumed work with defendant in November following. During this interval defendant paid him weekly compensation and also paid hospital and medical expenses incurred. Payments were discontinued when deceased resumed work. On account of his weakened condition deceased was unable to perform the manual labor he formerly did and was given the job of "straw boss" over a small crew of street cleaners. His duty under this employment was to oversee his colaborers and ride on the garbage cart used to carry refuse from the streets to the dumping place. On October 3, 1930, while in the act of alighting from the garbage cart, the mule drawing it jerked or stepped forward causing deceased to jump to the ground more quickly than he would have done had the animal not moved. According to one of the two eyewitnesses who testified, deceased landed on "his feet," while the other witness states he landed on "one foot" with the other one caught in or fastened to the rear of the cart. This witness states that it was necessary to assist deceased to disengage his foot from the cart. Deceased did not lose his equipoise; no part of his head or body collided with the truck or the pavement, though one of these witnesses states that the wheel of the cart struck the right leg. We do not think the weight of the evidence sustains this statement. De-

ceased continued to work at the cart for a period of from twenty to twenty-five minutes and fainted. He was carried to his home, where he remained for three weeks, and then was carried to the hospital where he died on October 25th.

■ Defendant filed a plea of prescription of one year against plaintiffs' right to recover compensation, if any be due them. This plea is good as to any action arising from the accident on March 24, 1929, as the last payment of compensation thereunder was made to deceased on October 24, 1929, and this suit was filed November 29, 1930.

Dr. L. A. Jackson, a colored physician, treated deceased for the injuries to him in the accident of March 24, 1929, and on October 14, 1930, was called to the home of deceased to treat a member of his household, and while there on that visit he was asked to examine deceased, who was suffering from a heart condition and from pain in the injured leg. Deceased at that time did not inform Dr. Jackson of any recent injury to him. He was treated by this physician until the day before his death and at no time complained to him of injuries received on October 3d, previous. This doctor diagnosed deceased's trouble as being endocarditis and myocarditis. He found no evidence of external injury or trauma on the body, except an enlargement of the leg at the site of the fracture, caused by bone growth in the process of union.

Mr. Bussie, superintendent of street cleaning department of the city, visited deceased on October 4th, and while there, at his request, examined his body, but found no evidence of wounds or injury on his legs. Deceased was then complaining of pain in right leg. This witness stated that deceased had worked for the city for fourteen years; that his physical condition was "normal," excepting he was afflicted with a minor rupture of eight or nine years' standing.

Dr. Matthews, a member of the medical staff of the Charity Hospital of Shreveport, performed an autopsy on the body of Lee Williams and found general evidence of syphilis and specifically of the brain, softening of the brain, and syphilitic lesion of the small arteries of the brain; and another area of softening on the right side of the medulla or brain stem. He stated that softening of the brain was due to blockage of the small blood vessels, followed by degeneration, causing death. Dr. Matthews found no wounds on the body nor evidence of infection of any character. He did find evidence of chronic myocarditis, such as accompanies some of the chronic infectious diseases, due to syphilis infection, but did not find evidence of endocarditis; that this syphilis was of a progressive type. His opinion was that death was caused from syphilis.

Dr. Sanderson, superintendent of the said hospital, did not think the jar deceased experienced when he jumped from the cart in October, 1930, had anything to do with or contributed to his death. His opinion was that death was due to the syphilitic condition found to involve deceased's brain. He stated that fainting or falling by one afflicted with a chronic case of syphilis should be expected; that the deceased's brain condition indicated that the disease was "rather regular, slowly progressing, long standing"; that he had been suffering from it for many years, and finally the softening condition set in producing death; that death follows the condition, in some cases, after the lapse of a few days, in other cases after the passing of weeks, and in others months after it sets in; each person reacts differently to the disease; that syphilis affects various organs of the body, including brain, heart, liver, kidneys, etc. That every one afflicted as was deceased has to give up at some time.

Dr. Pirkle did not testify at first trial but was introduced as a witness for plaintiffs at second trial.

Answering hypothetical questions, he stated that it was his opinion the second accident (October 3d) had something to do with Lee Williams' death, but he would not give an opinion as to the extent of the effect the accident had.

All of the physicians who testified in the case were positive that syphilis could not be caused by injury or trauma; that it is of the nature of the disease to remain in the system for long periods of time, but finally produces death by involving one or more organs of the body; that myocarditis is caused by infection; that syphilis may cause myocarditis but the reverse is not true.

■ The testimony leaves no doubt in our minds that Lee Williams was not injured when he jumped from the garbage cart on October 3d. He was possibly shaken up some and his sudden movement at the time probably jarred the previously injured leg causing it to pain him. The fact that he told no one of being injured on this occasion, not even his physician, is significant and indicates very strongly that he knew he was not injured then.

■ If the evidence showed that the jar to the deceased's body caused an inactive and latent disease to become active and produce death plaintiffs would be entitled to recover. We do not think the case is made out on this point.

The only testimony tending to support this theory is that of Dr. Pirkle. He was not positive that there was causal connection between the cart accident and death of Williams, but felt quite sure that the accident had something to do with the condition that immediately followed, and his death. Drs. Matthews and Sanderson were positive in their opinion that syphilis alone caused death,

and that life was not shortened by the accident.

It is likely true that the first accident to deceased reduced his physical powers of resistance and the disease, which to that time had not made itself felt extensively, was accelerated in its progress.

When the second accident occurred deceased was not in good physical condition. Eighteen months had elapsed since his leg bone and kneecap were fractured. The effects of this injury should have disappeared in this period, if there had not been some organic malady to prevent total recovery. It is safe to assume that the latent disease had made such progress in the interim that it was only a question of time when it would cause death.

In our opinion the evidence in the case does not sustain plaintiffs' contention that deceased died of injuries received in defendant's employ, but on the contrary preponderates in favor of defendant's theory that death was caused by syphilis not contributed to nor accelerated by the accident of October 3, 1930.

The judgment of the lower court is affirmed.