## BOLDEN v. PLANT LINE STEVEDORING CO., Inc.*

### No. 16441.

Court of Appeal of Louisiana. Orleans.

June 22, 1936.

Samuel J. Tennant, Jr., of New Orleans, for appellant.

Normann & McMahon and Harold M. Rouchell, of New Orleans, for appellee.

WESTERFIELD, Judge.

Plaintiff, a longshoreman, brought this suit against his employer for workmen's compensation at the maximum rate of $20 per week for a period of 22 weeks, subject to a credit of $10.20 per week paid him during fifteen weeks. The defendant resisted · plaintiff's demand upon three grounds:

(1) The prescription of one year under section 31 of the Compensation Law.

(2) No further compensation is due plaintiff under subsection 3 of section 8 of Act No. 20 of 1914, as amended; and,

(3) If said subsection 3 of section 8 of the Compensation Act, as amended, be construed so as to require the payment of additional compensation, it is unconstitutional because repugnant to the due process clause of the Fourteenth Amendment of the United States Constitution and section 2 of Article 1 of the Constitution of Louisiana of 1921 in that it deprives defendant of its property without due process of law.

The trial court sustained the plea of prescription and dismissed the suit.

Upon the trial of the case all compensation claimed beyond the period of fifteen weeks was abandoned and the case was tried upon an agreed stipulation of facts, in which it was admitted that the plaintiff was injured in the course of and within the scope of his employment on April 26, 1934, by sustaining a fracture of his left foot; that he was paid compensation by his employer from the date of the injury through August 11, 1934, a period of fifteen weeks, at the rate of $10.24 per week; that the plaintiff was employed by the defendant as a longshoreman at the rate of 65 cents an hour for an eight-hour day and $1 per hour for overtime; that plaintiff did not work every day, but only when required to do so by the necessities of the stevedoring business conducted by defendant, with the result that, for a period of more than one year prior to plaintiff's injury, his total earnings, as well as the earnings of defendant's other employees and every other longshoreman employed in the Port of New Orleans, averaged less than 24½ hours per week, or approximately $15.75, inclusive of overtime.

*Writ of certiorari refused Nov. 30, 1936.

The plea of prescription, which we will first consider, is based upon the following provision of the compensation statute, Act No. 20 of 1914, § 31, as amended by Act. No. 85 of 1926; "In case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death the parties shall have agreed upon the payments to be made under this Act or unless within one year after the accident, proceedings have been begun as provided in Sections 17 and 18 of this Act. Where, however, such payments have been made in any case, said limitations shall not take effect until the expiration of one year from the time of making the last payment."

More than one year having elapsed since plaintiff was injured, his suit is prescribed unless saved by the proviso extending the time for the running of prescription to one year from the last payment. The argument is that the words "such payments" mean only the maximum payment due under the compensation law and has no reference to partial payments which the parties have agreed upon. It is said that this construction of the statute is supported by the holding in Bearup v. Peru Min.·Co., 38 N. M. 531, 37 P.(2d) 535. In our opinion the statute of New Mexico construed in the cited case was different from the Louisiana statute, and, therefore, the case is not pertinent. We might add, however, that, in so far as the case is applicable at all, it is unfavorable to counsel's contention. For example, the court in that case held that the words "any installment" as used in the statute (Comp.St.N.M.1929, § .156-113) included, necessarily, the first, the last, and all intermediate installments, and further said that "The amount of the installment 'to which such workman may be entitled' can·be determined only by agreement or by judgment. In this case there was at least tacit agreement. A refusal thereafter to pay $15 per week was, we think, a refusal to pay the installment to which appellant was entitled, within the meaning of the act."

It was there held that the prescription of six months, which the New Mexico statute decreed should begin to run from the refusal of the employer to pay "any installment of the compensation," applied to both partial and full installments.

There is nothing in the proviso in section 31 of the Louisiana statute which limits the word "payment" to "maximum payment," and we must decline to so qualify it. "Such payments," we believe, means all such payments, whether in whole or in part.

There plea of·prescription must be overruled.

The second defense interposed by defendant is admittedly based upon a challenge of the correctness of the established jurisprudence of this state in that it seeks to overturn the holding of this court in Menzel v. Southern Stevedoring Company, 7 La.App. 703, Chatman v. Compania De Navegacao Lloyd Brasileiro, 19 La. App. 616, 140 So. 141, and Rylander v. T. Smith & Sons, Inc., 145 So. 64, of the Court of Appeal of the Second Circuit in Wilson v. Louisiana Central Lumber Company, 3 La.App. 425, and King v. American Tank & Equipment Corporation, 144 So. 283, and of the Supreme Court of Louisiana in Rylander v. T. Smith & Son, Inc., 177 La. 716, 149 So. 434, to the effect that, since the amendment of the compensation law by Acts No. 216 of 1924 and No. 242 of 1928, the compensation allowed an injured workman is based upon his daily rate of pay and not his average weekly wages. Counsel realizes the futility of his efforts, so far, at least, as this court is concerned, and does not attempt to argue or brief the point, being content with its mere statement. ·This defense is without merit.

The next question raised by defendant, that involving the constitutionality of subsection 3 of section 8 of the Compensation Act, as amended (Act No. 242 of 1928, p. 361), is based upon its alleged unreasonable character as interpreted by the appellate courts of this state. The section under attack reads: "The term 'wages' as used in this act is defined to mean the daily rate of pay at·which the service rendered by the injured employee is recompensed under the contract of hiring in force at the time of the injury, and anything herein ·contained to the contrary notwithstanding the maximum compensation to be paid under this act, shall be twenty dollars per week and the minimum compensation shall be three dollars per week; provided that if at the time of the injury the employee was receiving wages at the rate of three dollars or less per week, then compensation shall be· full wages."

As applied to this case, for example, the daily rate of pay of plaintiff, at 65 cents

an hour for an eight-hour day, would be $5.20, and, allowing six days for a working week, $31.20 per week, 65 per cent. of which sum would be $20.28, or more than the maximum of $20 allowed by the act. Thus, plaintiff would receive $20 per week. Though his average weekly earnings for more than one year previous to the accident was only $10.26, an intolerable situation, counsel believes, and one calculated to encourage malingering, since the compensation paid an injured workman would exceed his earnings while employed. We are referred to New York C. R. Co. v. White, 243 U.S. 188, 37 S.Ct. 247, 61 L. Ed. 667, L.R.A.1917D, 1, Ann.Cas.1917D, 629, wherein the Supreme Court of the United States held the compensation statute of the state of New York to be constitutional because it graduates "the compensation for disability according to a prescribed scale based upon the loss of earning power, having regard to the previous wage and the character and duration of the disability." The court said:

"Viewing the entire matter, it cannot be pronounced arbitrary and unreasonable for the state to impose upon the employer the absolute duty of making a moderate and definite compensation in money to every disabled employee, or, in case of his death, to those who were entitled to look to him for support, in lieu of the common-law liability confined to cases of negligence.

"This, of course, is not to say that any scale of compensation, however insignificant, on the one hand, or onerous, on the other, would be supportable. In this case, no criticism is made on the ground that the compensation prescribed by the statute in question is unreasonable in amount, either in general or in the particular case. Any question of that kind may be met when it arises."

In Mountain Timber Company v. Washington, 243 U.S. 219, 37 S.Ct. 260, 266, 61 L.Ed. 685, Ann.Cas.1917D, 642, it was said:

"With respect to the scale of compensation, we repeat what we have said in New York C. R. Co. v. White, that, in sustaining the law, we do not intend to say that any scale of compensation, however insignificant, on the one hand, or onerous, on the other, would be supportable, and that any question of that kind may be met when it arises. * * *

"The act cannot be deemed oppressive to any class of occupation, provided the scale of compensation is reasonable, unless the loss of human life and limb is found in experience to be so great that, if charged to the industry, it leaves no sufficient margin for reasonable profits."

See, also, Ward & Gow v. Krinsky, 259 U.S. 503, 42 S.Ct. 529, 66 L.Ed. 1033, 28 A. L.R. 1207.

The argument is that the effect of the section of our compensation statute as construed by the appellate courts of this state and as applied to this particular case is to award the plaintiff a sum equal to double the amount his average weekly earnings, a result which, it is contended, is wholly unreasonable and unjustified as being beyond constitutional restraints.

Our answer to this contention is that the Louisiana compensation statute predicates its compensation upon earning capacity and not the actual earnings of the workman for any given period. An award of 65 per cent. of the earning capacity based upon the daily rate of pay may, and, in this case undoubtedly does, amount to more than the average weekly earnings of the employee during the year prior to the accident. But it conceivably might be considerably less, as, for example, if conditions were prosperous and work constant in the stevedoring line, a longshoreman, with extra work at $1 an hour, might earn very much more than $20 per week. A similar situation was presented in the case of Rylander v. T. Smith & Sons, supra, where the testimony showed that a longshoreman, whose daily rate of pay was based on wages of 65 cents per hour for an eight-hour day, as in this case, had never received, during the entire course of his employment, more than $8.40 for any one week, and as little as $2.80. There, as here, the defendant argued that "we should divide the average of these weekly payments by the number of weeks which plaintiff worked" in order to fix his compensation, because, "to do otherwise would result in unfairness to his employer in that an injured employee would receive greater compensation than one who was able-bodied, due to the fact that work on the river front is intermittent and unsteady, employment being provided some days only for a few hours, and at other times a half or a whole day, as the situation justifies." After pointing out that we had decided otherwise in Chatman v. Compania De Navegacao Lloyd Brasileiro, supra, we said: "We do not feel called upon to defend the ruling in the Chatman Case, but certain considerations leap to the eye; for example, What would be the basis of compensation of

an employee who had been seriously injured or killed during the first hour of his employment following a long period of unemployment, say six months of a year, in which he had been able to earn only a few dollars, let us say an average of a dollar a week? What system of average could be employed to compensate such workmen, whose daily rate of pay was $5.20."

In the case of Sesnan v. Cotton Trade Warehouse, Inc., et al. (La.App.) 165 So. 23, the plaintiff was employed as a "sewboy" and his compensation fixed at 55 cents for each 100 bales of cotton compressed by the crew of which he was a member. It was contended that the basis of Sesnan's compensation should be his average weekly earnings, and a statement of his weekly earnings for a period of three years was in evidence, in which it was shown that he earned a maximum of $14.78 and a minimum of 32 cents. It was obvious that, to take these figures as a basis for Sesnan's compensation, would have resulted in a very small allowance, but since the law required us to use his daily rate of pay as the basis for computing his compensation, and, since he was a pieceworker and the record did not give his daily earnings, we were compelled to remand the case for the purpose of obtaining that information. To conclude our discussion of this point, we find nothing unreasonable in a statute like ours, which bases the rate of compensation upon the daily rate of pay, instead of the average weekly earnings for a given length of time. On the contrary, we believe this method of estimating compensation to be much more reasonable than the other. It may be that, in certain occupations, because of peculiar conditions obtaining, an injured workman will receive more money than an able-bodied employee. But, in the long run and as a whole, the daily rate of pay basis is more calculated to do justice by the employer and the employee than his average weekly earnings.

It is said that Louisiana is the only state which bases its compensation upon the daily rate of pay. If this be true, it would simply reflect a difference in opinion between the Legislature of Louisiana and that of the other states of the Union.

It follows, from what we have said, that the judgment appealed from is erroneous.

For the reasons assigned it is now ordered that the judgment appealed from be reversed and that there be judgment herein in favor of the plaintiff, Isaac Bolden, and against Plant Line Stevedoring Co., Inc., defendant, for compensation in the sum of $20 per week for fifteen weeks, beginning April 26, 1934, to and including August 11, 1934, subject to a credit of $10.24 per week for fifteen weeks previously paid, and with interest upon the installments from their due date at the rate of 5 per cent. per annum, until paid, and for all costs.

Reversed.