## FORD v. LOUISIANA & A. RY. CO.
### No. 6134.

Court of Appeal of Louisiana,
Second Circuit.

March 6, 1940.

Rehearing Denied April 4, 1940.

Writ of Certiorari and Review Denied
May 27, 1940.

404

leged causes of action to recover money judgments, to-wit:

1. For damages on account of Ford's death, allegedly caused by the malpractice of the surgeons engaged by defendant to perform a major operation on him after he was injured while working for the defendant;

2. In the alternative, for compensation for three hundred weeks as dependent widow;

3. In the alternative, for a definite amount "under any Federal statute or other laws applicable to petitioner's claim."

Plaintiff alleged in her original petition that her husband was injured, although not seriously, on July 19, 1937, while working for defendant; that thereafter he was ordered to submit to an operation requiring a spinal puncture, which was "improperly" performed by defendant's physicians, acting as its agents, in the North Louisiana Sanitarium in the City of Shreveport, Louisiana, at which time he was being paid compensation; that discontinuance of compensation payments was threatened if the operation was not submitted to; that paralysis of the left leg and left side resulted from the "improper medical treatment and operation", but the symptoms thereof did not manifest themselves until August 1, 1938; and, thereafter, on May 25, 1939, Ford died from the said "improper medical treatment given to correct the effects of the injuries first sustained." The date of the operation is not stated.

It is further alleged that monthly payments of compensation, in keeping with an agreement between deceased and defendant, his employer, were paid to him until the time of his death.

This suit was filed on June 30, 1939.

Defendant excepted to the petition as in no respect disclosing a cause or right of action, and, in addition pleaded prescription of one year against the asserted claim under the Workmen's Compensation Law of this state. After trial and submission of the exception, but prior to decision thereon, plaintiff filed a supplemental petition. This was particularly designed to, aid and supplement the allegations of the original petition relating to the demand for damages on account of Ford's death. It is alleged therein that defendant was under a legal obligation to furnish medical treatment to the deceased and that it maintained and assisted in maintaining partic-

R. J. Newson, of Shreveport, for appellant.

A. L. Burford, of Texarkana, Ark., and White, Holloman & White, of Alexandria, for appellee.

TALIAFERRO, Judge.

Plaintiff, as the surviving widow of Ed Ford, deceased, sues on three different al-

405

tlar physicians and hospitals, not only for the treatment of its injured employees, but also for the purpose of making a profit out of the services of these said physicians, in that they were especially instructed and employed for the purpose of enabling injured employees, to whom defendant was under obligation to pay compensation, to recover from their injuries more quickly than would otherwise happen; that defendant failed to exercise reasonable care in employing competent physicians to treat its injured employees, and, for this reason, did not discharge the legal duty due by it to the deceased; that deceased was informed that the proposed operation was a simple one and would not unfavorably affect his health or physical condition; and that he *"died as a result either of the injury caused from the original accident or, as plaintiff believes, and therefore alleges, that he died in less than a year from the effects of the said operation; and she also alleges that he died from the combined effects of the original accident and the improper operation and medical treatment."* She draws a legal conclusion in alleging: "That under the circumstances, petitioner alleges that defendant failed to furnish reasonable medical, surgical and hospital services."

It is admitted in the supplemental petition that the deceased was not performing work of interstate commerce character when injured. This admission automatically removes from the case the second alternative demand.

The exception of no cause of action was sustained as to all phases of plaintiff's demands and her suit was dismissed. She prosecutes this appeal.

The right of the dependents of an injured workman to recover compensation in case he dies, is granted and controlled by sub-section 2 of Sec. 8, Act 20 of 1914, as amended, which, as far as pertinent to the present issue, reads as follows: "For injury causing death *within one year after the accident* there shall be paid to the legal dependents of the employee, actually and wholly dependent upon his earnings for support at the time of the accident and death, a weekly sum as hereinafter provided, for a period of three hundred weeks."

It is obvious that as a condition precedent to the right of dependents to recover compensation, the injured employee must have died within a year of the accident. The above-quoted provision of the Workmen's Compensation Law is free from doubt as to its meaning.

The power to enact a Workmen's Compensation Law reposes in the law-making body of the state. The amount of compensation, to whom due and payable, the limitations and restrictions within which it may be demanded, peculiarly address themselves to the law-making power. Act 20 of 1914, with subsequent amendments, reflects the will of the law-maker on the subject and through its beneficent provisions dependents acquire the right to demand and receive the monetary benefits named therein. Courts are not concerned with the lack of consistency, the inequities or other seemingly apparent shortcomings of the act. It is their province to construe and enforce its provisions as written, especially when unambiguous.

This court in Connell v. United States Sheet & Window Glass Company, 2 La. App. 104, 105, discussed at length the above-quoted excerpt from the Workmen's Compensation Law in connection with Sec. 31 thereof, and held there was no conflict between the two.

The Supreme Court in Monvoisin v. Plant, 147 La. 464, 85 So. 206, 207, also interpreted said sub-section 2 and therein said: "If the death of Monvoisin on October 16, 1919, was caused by the accident which befell him on September 29, 1917, the Compensation Act does not give a right of action to his survivors, as the death did not occur within one year from the date of the accident."

The same question was dealt with by this court in Dove v. Stanolind Oil & Gas Company, La.App., 156 So. 39, and in Lewis v. Texas Company et al., La.App., 169 So. 181. In the Dove case we said: "It would seem that the cause of action allowed the dependents is too plainly limited to cases where the injury causes death within one year of the accident to permit of dispute. It was so held in Monvoisin v. Plant, 147 La. 464, 85 So. 206, 207 * * *."

We specifically held in the Lewis case that Act 29 of 1934, amending Sec. 31 of the original Workmen's Compensation Law, did not modify sub-section 2 of Sec. 8 of that law nor the jurisprudence thereunder.

The cases cited by plaintiff, to-wit: Doby v. Canulette Shipbuilding Co., Inc., La.App., 156 So. 51; Bolden v. Plant Line

Stevedoring Co., Inc., La.App., 169 So. 189; Pitts v. M. W. Kellogg Co., Inc., et al., La. App., 186 So. 389; Williams, et al. v. City of Shreveport, La.App., 142 So. 335; Dodd v. Lakeview Motors, Inc., La.App., 149 So. 278; Hoy v. T. S. Grayson Lbr. Company, 15 La.App. 176, 130 So. 651; Grisham v. Wray-Dickinson Company, 1 La.App. 56, it will be disclosed from a cursory reading, are not applicable to the facts of this case.

Plaintiff at no time was vested with a right to sue for the compensation claimed by her herein.

The allegations of the original petition make it clear that it was plaintiff's theory that her husband's death was attributable to the "improper medical treatment and operation" which defendant's physicians rendered and performed upon him in an effort to overcome the effects of the original trauma, but the definiteness of these allegations is completely obscured by the allegations of the supplemental petition italicized above. These latter allegations supersede those of the original petition and reflect on plaintiff's part utter uncertainty as to the real cause of death. She says therein that Ford died either from the original injury or within a year from the effects of the operation. The cause of death is made quite uncertain by these averments. The language is equivocal in that it conveys the idea that death was due to one of two possible causes. It certainly is not a clear cut allegation that death was the result of improper medical treatment rendered to and the improper operation performed upon the deceased. The issue is made the more cloudy by the additional averments that "he died from the combined effects of the original accident and the improper operation and medical treatment."

These allegations are not sufficient to disclose a cause of action in a suit to recover damages allegedly resulting from malpractice of a physician or surgeon. They are void of that definiteness and certainty on the score of causation necessary to admit of proof of that strict character required in an action of this kind. If death was a result of the original injury, of course, no one is responsible in damages therefor. If death resulted from the combined effect of the original injury and the medical treatment and surgical operation, no action for damages on that account may be maintained. Eliminating these two possible causes of death leaves only the third

possible cause, to-wit:—improper medical treatment and improper surgical operation. But plaintiff does not specifically and unequivocally, as was necessary for her to do, allege that death was exclusively due to this cause.

However, defendant does not rest its case, under the exception, upon the deficiencies of the petition commented on. It contends, primarily, that as a condition precedent to the disclosure of a cause of action, as regards the demand for damages, the petition should contain allegations of fact clearly disclosing that the physicians and surgeons who treated the deceased did so as its agents. This position is well supported by judicial precedents.

The Workmen's Compensation Law imposes upon the employer the duty of furnishing to the injured employee reasonable medical, surgical and hospital services not exceeding a cost of $250, unless the injured employee refuses such service. The petitions disclose that the medical and other services rendered to the deceased were rendered to meet the requirements of this law. They further disclose that the deceased was placed in a sanitarium for treatment and was treated by physicians of defendant's selection. Beyond this, it is not alleged that defendant, its officers or agents had anything to do with the case. It is not alleged nor intimated that the physicians were directed as to the treatment to be administered to the deceased, nor that defendant exercised or attempted to exercise any control or direction over the physicians who treated him or the surgeons who operated on him. It would, of course, have been presumptuous for defendant to have done so. The deceased was placed in the hands of these physicians to be ministered to and to do what they thought best to alleviate his injuries and suffering. It is not alleged nor contended that they were incompetent.

In view of the aforesaid facts, it would be a far cry to say that the doctrine of respondeat superior applies.

Cases involving the principle here discussed have frequently arisen in different jurisdictions of the United States. The overwhelming weight of authority is that the relation of principal and agent or master and servant is not superinduced under similar state of facts. On the contrary, the physician or surgeon occupies the position of independent con-

tractor for whose acts of negligence or error in diagnosis, etc., the employer is not responsible in damages. However, for the employer to receive the full protection which this relation otherwise secures to him, it must appear:

(1). That in selecting the physician, the employer exercised ordinary care, which means that the physician is, at least, of average skill and ability, and

(2). That the employer does not derive profit from the retention or selection of the physician or surgeon whose services are rendered to the employee.

In Congdon v. Louisiana Sawmill Company, 143 La. 209, 78 So. 470, 472, in which plaintiff sought to hold the defendant employer responsible in damages for alleged malpractice of its "company" physician, it was held that to disclose a cause of action the petition should affirmatively reveal:

1. That defendant derived a profit from the employment of the physician;

2. That ordinary care in selecting a physician to treat defendant's employees was not exercised;

3. That the physician employed was incompetent.

In that case an exception of no cause of action was sustained. The court quoted the rule, well established, in a long line of cited cases, to be: "Where a master employs a surgeon for the benefit of its men and without profit to itself, it is not liable for the surgeon's malpractice in case it exercised reasonable care in the selection of a competent surgeon."

The court quoted at length from the leading case of Quinn v. Kansas City, M. & B. Railroad Co., 94 Tenn. 713, 30 S.W. 1036, 28 L.R.A. 552, 45 Am.St.Rep. 767. We here reproduce the portion of the opinion in that case which our own Supreme Court quoted with approval, to-wit:

"Plaintiff in error insists that the defendant in error is liable for the mistakes or malpractice of the surgeons in question; that their employment by the railroad created the relation of master and servant; and that the ordinary rule, which makes the master liable for the negligent acts of his servant within the scope of his employment, is to be applied in this case. If he be correct in his contention that the relation between the railroad and these surgeons was that

of master and servant, then his conclusion would properly follow. But was that the relationship? We do not think so. The term 'servant,' as it is used in connection with the rule invoked, has a well-defined meaning. It 'is applicable,' says Mr. Thompson, in his work on Negligence (volume 2, p. 892), 'to any relation in which, with reference to the matter out of which an alleged wrong has sprung, the person sought to be charged had the right to control the action of the person doing the alleged wrong; and this right to control appears to be the conclusive test by which to determine whether the relation exists.'

"'For the relation to exist, so as to make the master responsible, he must not only have the power to select the servant, but to direct the mode of executing, and to so control him in his acts in the course of his employment as to prevent injury to others.' Robinson v. Webb, 11 Bush (Ky.) 464. To the same effect is Mound City, etc., Co. v. Conlon, 92 Mo. 221 (4 S.W. 922); Wiltse v. State, etc., Co. 63 Mich. 639 (30 N.W. 370); Andrews v. Boedecker, 17 Ill.App. 213.

"The term 'master' is equally well defined in the law. A 'master,' in the sense of the rule, is 'one who has the superior choice, control, and direction; whose will is represented not merely in the ultimate result in hand, but in all its details; one who is the responsible head of a given industry; one who has the power to discharge; one who not only prescribes the duty, but directs, and may at any time direct, the means and methods of doing the work.' 14 Am. & Eng. Encyc. of Law, 745.

"If it be, as these authorities indicate (and it cannot be otherwise), that the decisive test of this relationship, or even one of its decisive tests, is that the master has the right to select the end of the servant's employment, and that the master's uncontrolled will is the law of the servant 'in the means and methods' by which this end is to be reached, then it cannot be maintained that these surgeons were the 'servants' of this corporation. They were not employed to do ordinary corporate work, but to render services requiring special training, skill, and experience. To perform these services so as to make them effectual for the saving of life or limb, it was necessary that these surgeons should bring to their work

not only their best skill, but the right to exercise it in accordance with their soundest judgment, and without interference. Not only was this the right of these surgeons, but it was as well a duty that the law imposed. If the railroad authorities had undertaken to direct them as to the method of treatment of the injured man, and this method was regarded by them as unwise, they would have been 'bound to exercise their own skill and better judgment, and to disobey their employers, if in their opinion the welfare of the patient required it.' Union Pac. R. Co. v. Artist (8 Cir.) 60 F. 365 (9 C.C.A. 14, 23 L.R.A. 581).

"In accordance with this view it has been uniformly held, so far as we have been able to discover, that, having selected surgeons skilled and competent in their profession, the corporation has discharged every duty that humanity or sound morals impose, and that it is to no extent liable for the mistakes they may subsequently commit."

To same effect are: Louisville & N. R. Co. v. Foard, 104 Ky. 456, 47 S.W. 342; Eighmy v. Union Pac. Railway Co., 93 Iowa 538, 61 N.W. 1056, 27 L.R.A. 296; Atlantic Coast Line Railway Co. v. Whitney, 62 Fla. 124, 56 So. 937.

An array of authorities from several other states of the union to the same effect, is listed in 33 A.L.R. 1191.

■ The profit to the employer, referred to in the above-cited decisions, does not comprehend that which plaintiff alleges accrues to the employer, who, in obedience to law, furnishes medical, hospital and physician's services to an injured employee. This provision of the law was prompted by humanitarian considerations. But for it, perhaps, only a small percentage of injured employees would receive treatment at their employer's expense to the limit fixed by the Workmen's Compensation Law. It is true that in many cases the employer or his insurer, ultimately is relieved from compensation payments in full or part through the physician's services, but this would not, in the ordinary or usual meaning of the word, be considered a profit. The sort of profit the courts have in mind in cases of this kind, is that which directly devolves upon the employer from the services of the physician. For example, in return for selecting a certain physician, if that physician should share with the employer the compensation received by him for his services, this would be a profit flowing from the selection. If the employer had some interest or ownership in a hospital to which all of his injured employees were sent for treatment and was paid a percentage of the income or earnings of the institution derived from such cases, this would also be a profit.

In such cases, the relation of the employer and the hospital or physician would partake of the nature of a partnership or business venture, since the employer was sharing in the income or profits received by each.

■ While plaintiff alleges that defendant was negligent in not exercising reasonable care "in employing proper doctors", the facts constituting such negligence, forming the basis of this legal conclusion, are not set forth. It is not said that these doctors are incompetent, nor that they are below the average in training, skill and ability. Reference to them as not being "proper" does not necessarily convey the thought that they were incompetent or that defendant failed in its legal duty in selecting them to treat the deceased.

The conclusion is drawn that these doctors erred in diagnosing the deceased's condition and, therefore, "improperly" treated him. Wherein such error lies is not averred. No facts are set forth to form the basis of the conclusion. If the doctors were of average skill and ability, qualities we are authorized to infer since there is no negative allegation thereon, defendant cannot, in view of the facts of the case, be held responsible for their errors or negligence.

Plaintiff appears to have abandoned the charge that the deceased was virtually coerced into submitting to the operation by threats to discontinue compensation payments on his refusal. There is no merit in this contention anyway.

For the reasons herein assigned, the judgment of the lower court sustaining the exception of no cause of action, appealed from, is affirmed, with costs.