Israel Jones, the plaintiff, a negro laborer, forty-three years of age, employed by Woodward-Wight Company, Ltd., was injured on January 4th, 1941, while assisting in the unloading of a box car. He notified his employer of his injury which, in turn, reported the accident to its insurance carrier, the National Casualty Company, and that company provided Jones with medical attention and paid him compensation at the rate of $7.80 per week until February 20th, 1941, when he was discharged as cured and declared able to resume work. On March 27th, 1941, Jones brought this suit against his employer and its insurance carrier, claiming that he was totally and permanently disabled as a result of the accident, and praying for four hundred weeks' compensation at the rate of $8.19 per week instead of $7.80, subject to a credit of the amount of compensation already paid him. Before answering the defendants sought and obtained the consent of plaintiff's counsel to have Dr. H. Theodore Simon, an orthopedic specialist, see the plaintiff. Dr. Simon examined Jones on April 8th, 1941, and caused X-ray pictures to be made of his spine (Jones suffered a back injury) and reached the conclusion that he was still disabled and suffering from "a sub acute sacro-iliac inflammation on the left side, that is to say, evidence of muscle spasm and unilateral limitation of spine motion and positive sacro-iliac signs". He suggested a corset and physio-therapy treatments, which Jones received until June 23rd, 1941, when he was discharged as cured. His compensation which, in the meantime, had been continued by his employer, was discontinued as of the date of his discharge. On November 12th, 1941, about five months after Dr. Simon had discharged him, Jones filed a supplemental petition in which he alleged that he was suffering from "a chipped fracture of the superior anterior surface of the body of the third lumbar vertebra", which had been caused by the accident, a detail not contained in his original petition. He reiterated his claim for compensation for four hundred weeks at $8.19 per week based upon total disability.
Defendants, in their answer, admitted the accident but averred that plaintiff had completely recovered from the effects thereof and that, therefore, there was no further compensation due him.
The lower court agreed with defendants and accordingly dismissed plaintiff's suit. From this judgment he has appealed.
As is apparent from the foregoing recital of the facts, the questions involved are the extent of plaintiff's injuries, that is to say, whether he had recovered at the time that defendant ceased paying him compensation, and second, the proper rate of compensation.
The solution of the first question depends upon the appreciation of the medical testimony which we find to be in irreconcilable conflict.
We find Drs. C.N. Houston, George C. Battalora and H. Theodore Simon, who testified for the defendants, maintaining the position that Jones is able to resume his occupation.
Drs. Mannie Mallowitz, E.H. Maurer, Morris Friedman and Irving Redler, who testified for the plaintiff, maintain that Jones is still disabled and that the X-ray pictures definitely exhibit a "compression fracture of the anterior, superior surface of the third lumbar vertebra", which disables him. *Page 76 
Dr. Simon, when his attention was called to the opinion of plaintiff's doctors, declared that there was no fracture and the X-ray plates did not warrant such diagnosis; that what appeared to the other men as a fracture was an "osteophyte", which, it is explained, is a bony projection caused by osteo-arthritis "a condition which we see coming on with middle age and getting worse as we get older".
The X-ray plates, which were introduced in evidence below, are not in the record, but their absence detracts nothing from and their presence would add nothing to our ability to understand the condition obtaining in the region of the third lumbar vertebra of the spine of Israel Jones. When seven learned gentlemen of the medical profession cannot agree after having seen the X-ray pictures and made physical examinations of Jones, we cannot hope to reach an intelligent and independent conclusion of our own, based upon the hospital records and shadowgraphs, which is what Dr. Simon calls X-ray pictures, and other medical indicia of health or illness upon which the medical profession depends for diagnosis. However, we find that all of the doctors agree that Jones was a most cooperative patient and none of them would characterize him as a malingerer. Jones was an able-bodied and proficient laborer prior to the accident and, at the time of the trial, January-April, 1942, had been unable or unwilling, if you please, to do any work. When Jones worked he was paid thirty cents per hour. The amount of compensation paid by his employer was $7.80 a week. It is a matter of common knowledge that laborers are presently in great demand and it is apparent that Jones cannot profit by refusing to work in order to obtain the small amount of compensation due him.
While the preponderance of medical testimony, like that of any other species of testimony, is not always to be depended upon, it will be noted that four of the seven doctors believed that Jones is still disabled, and we know of no method by which we can determine whether the majority or the minority opinion is the correct one. It is our opinion, however, that Jones should not be denied compensation.
In regard to the amount of compensation, plaintiff claims that he should have been paid thirty-nine cents per week more than was paid him by his employer. This contention is based upon the statement that he worked forty-two hours instead of forty hours a week. However, Mr. Woodrow Truxillo, the payroll clerk of Woodward-Wight Company, Ltd., does not sustain this contention.
For the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered that there be judgment herein in favor of the plaintiff, Israel Jones, condemning the defendants, Woodward-Wight Company, Ltd., and National Casualty Company, to pay him compensation at the rate of $7.80 per week during the period of disability not in excess of four hundred weeks, with legal interest on each installment from its due date until paid, subject to a credit of twenty-four weeks' compensation previously paid the plaintiff by the defendants.
Reversed. *Page 222