This is a suit for workmen's compensation. Plaintiff, Henry Mertz, was employed by the defendant, Steve Von *Page 134 
Schlemmer, as a baker at the defendant's bakery in the city of New Orleans. He was injured on May 19th, 1940, when he tripped and fell against a roller in the bakery. His right arm caught in the roller and, as a result, he suffered a compound fracture of that member. Defendant paid plaintiff compensation amounting to $187 from the date of the accident until August 24th, 1940, at which time defendant contended that plaintiff had fully recovered and was able to go back to work.
On May 19th, 1941, or one year after the accident, plaintiff filed this suit in which he claims that, as a result of the accident, his right arm is totally and permanently disabled and that he is unable to perform the duties of his former occupation of baker. He prays for an award of compensation for 400 weeks, less credit for $187 compensation previously paid by the defendant.
After the institution of the suit, viz. — on June 11th, 1941 — the defendant had plaintiff examined by Dr. H. Theodore Simon, an orthopedist, who advised defendant that plaintiff's disability in his hand and forearm amounted only to ten or fifteen percent and that plaintiff was fully able to return to his former occupation of baker. However, Dr. Simon recommended that an operation be performed on plaintiff's arm, known as a "styloid process", which Dr. Simon believed would reduce the percentage of disability to plaintiff's arm and any alleged discomfort caused by the fracture. On June 14th, 1941, in accordance with this recommendation, plaintiff underwent the operation which was performed successfully by Dr. Simon. Thereafter, he received heat treatments at the doctor's office until October 22d 1941, when he was advised that he was fully cured; that his disability had been reduced to less than five percent and that he could easily perform the duties required of him as a baker. The cost of this operation amounted to $302.91 and it was agreed by opposing counsel that, in the event the court should find that there was any compensation due the plaintiff, the amount of the expense of the operation over and above $250 would be credited against such compensation.
Defendant, in his answer to plaintiff's suit, resists liability on the ground that the injury to plaintiff did not arise out of his employment as baker or within the scope of said employment. In the alternative, defendant maintains that, in the event compensation is found to be due, plaintiff's recovery should be limited to compensation payable from May 19th, 1940, until October 22d 1941 (when plaintiff was discharged by Dr. Simon as cured), or a period of 74 weeks, and further, that the rate of compensation should be based on plaintiff's daily rate of pay of $4.26 for three days per week, rather than the usual 40 hour week basis, for the reason that plaintiff worked only three days a week and did not desire to work for more than three days a week, notwithstanding that he was able to obtain regular employment for a forty hour per week period.
After a trial in the district court on the foregoing issues, judgment was rendered in favor of plaintiff for compensation for 74 weeks at the rate of $13.85 per week (which is 65% of the daily rate of pay of $4.26 based on a five day work week), less credit for $187 previously paid and less the amount of $52.91, representing the cost of the operation performed upon plaintiff over and above the $250 allowed by the compensation statute. Both parties have appealed from the decision.
In this court, the defendant has abandoned the contention made in his answer that the accident did not arise out of and in the course of plaintiff's employment as a baker and his counsel have frankly stated to us that the evidence does not justify the maintenance of this point. In addition, counsel do not seriously question the correctness of the ruling of the trial judge that plaintiff suffered disability for at least 74 weeks, since the evidence plainly authorizes this finding and even Dr. Simon, defendant's expert, concedes that plaintiff's arm was not restored to full use until after he successfully performed the operation known as a "styloid process". In fact, the only real complaint made by counsel for the defendant is that the district court should have based the award of compensation on a three day working week rather than the usual 40 hour week.
Conversely, the sole complaint of the plaintiff, with respect to the judgment of the court below, is that he should be awarded compensation for 400 weeks because he is unable to perform the work required of him in his occupation and is therefore totally and permanently disabled within the meaning of the Employers' Liability Act. Act No. 20 of 1914. *Page 135 
Defendant's contention that the compensation due plaintiff should be based on a three day working week is founded on the premise that the evidence in the record shows that plaintiff was known as a "part time worker"; that he had refused to work over three days per week, although he had numerous opportunities to obtain regular employment from the year 1928 up to the date of the accident and that, in these circumstances, his compensation should be based on the maximum time that he was willing to work rather than upon the time that he could have worked if he had so desired. In advancing this argument, counsel concede that it has been well-settled in this State, since the decision of the Supreme Court in Rylander v. T. Smith Son, 177 La. 716,149 So. 434, that, under section 8 of Act No. 20 of 1914 as amended by Act No. 242 of 1928, the rate of compensation to be allowed the injured workman is based upon his daily rate of pay; that, in computing the compensation, it makes no difference how many days per week the employee works and that he is entitled to recover on the basis of a full work week whether he actually works the whole week or not. Counsel say that the conclusions reached in the Rylander case and the similar rulings of the other appellate courts of the State (see Bolden v. Plant Line Stevedoring Co., La.App., 169 So. 189, and authorities there cited), are founded upon the fact that, in those cases, it appeared that the employees were not able to work for a full week because of economic conditions. Hence, it is said that the reasoning of those decisions is inapplicable to the present situation for, here, it appears that the employee has been able to obtain employment and he has refused to accept such employment because he does not wish to work over three days per week.
The argument of counsel for defendant might have much force, if the evidence in the case justified the resolution that the plaintiff was unwilling to work over three days per week. The evidence produced by the defendant in support of the proposition consists of his own testimony; that of Edward Naudon, another baker, and that of Lionel Morris, a member of plaintiff's union. The defendant stated that he had asked plaintiff to do extra work on several occasions but that the latter refused, asserting that he was satisfied with part time employment. Naudon declared that the plaintiff had previously worked for him as a bench hand; that he quit the job; that he later offered to employ him but that plaintiff refused the employment. Morris stated that he was acquainted with plaintiff for many years and that he had never known him to be employed regularly.
On the other hand, plaintiff testifies that he has never, at any time, refused regular employment; that, while it is true that he declined to work for Mr. Naudon, he did so because Naudon had previously discharged him and that a feeling of ill will existed between them.
Anthony H. Buckley, testifying for plaintiff, stated that he has been for over a year the business agent of the Bakers and Confectionery Workers Union No. 35, of which plaintiff is a member; that, prior thereto, he was president of the union; that, from the year 1936 to 1939, the employment of bakers was at its lowest ebb; that demand for employment increased from March, 1939, and reached its peak in 1941 and that he did not, on any occasion, recall that plaintiff refused to accept employment with any bakery.
We do not think that the statements made by the defendant and his witnesses clearly preponderate over plaintiff's denial that he was unwilling to accept regular employment if it had been offered to him. The record shows that plaintiff worked two days each week for the defendant and that he also worked as a part-time employee at Lombardo's Bakery for one day each week. We find that defendant's evidence, respecting plaintiff's refusal to work steadily, is quite vague as to the time, place and circumstances under which the plaintiff indicated that he would not consider regular employment, except with regard to his refusal to work for Naudon. As to this, plaintiff satisfactorily explains the reason why he refused to work for Naudon. In order for the contention of the defendant to be sustained, we believe that the evidence should be clear that the employee has been steadfast in his refusal to accept regular employment. The evidence in this case does not warrant such a conclusion.
We therefore pass on to a consideration of the main question in the case, which is — whether or not the injury to plaintiff's arm has rendered him permanently and totally disabled to pursue his occupation of baker. The injury consists of a compound fracture of the radius bone in plaintiff's *Page 136 
right forearm. In addition to this, the ulna, or other bone of the forearm, sustained a chip of the bone described as the styloid, which is the triangular portion of the ulna bone connecting with the wrist. X-ray pictures taken of the arm show the presence of this chipped bone which was removed by the operation performed by Dr. Simon on July 14th, 1941.
Plaintiff testifies that he suffers pain in his arm at the present time; that it swells and that he is unable to use it to any great extent, particularly in doing the work required of a baker which necessitates the vigorous use of both hands in kneading dough.
Dr. E.H. Maurer, an orthopedist, testified as an expert in plaintiff's behalf. The sum of his evidence is that plaintiff's injury is permanent and that he can no longer perform the duties required of a baker. He makes the following statement:
"Mr. Mertz gave the following complaint: `Dull, aching pain of intermittent character over site of fracture. Pain in muscles of the forearm around site of fracture when fingers are flexed and wrist is extended. Lateral motions of the wrist were painful, particularly on the ulna side. Inability to rotate the arm normally. Complains of his grip being very poor, and also noticed when he flexes the wrist when pronation and supination are executed, there is a clicking in the forearm'. Examination revealed the following: `Inspection shows the lower end of the ulna is abnormally prominent, and there is a distinct dipping in of the tissues over lower middle third of the radial side. There is a faint scar over the middle aspect of the forearm, site of previous operation. There is a faint scar on the anterolateral aspect of the forearm, running longitudinally down to the junction of the lower and middle third, site of accidental laceration.' The measurements of the arm, that is, the comparative measurements, comparing the right with the left, at exact same level, in the upper third, right 8 1/2 inches, left 10 inches. In the middle third, the right arm 3 inches, the left 6 1/4 inches. Comparative grip in the right hand about one-half of the left. The right hand thermically is cold compared to the left. A definite clicking noise is audible upon motions of the wrist and upon rotary motions of the forearm. Definite tenderness and pain is elicited over the angular deformity of the fracture on the anterior surface of the forearm. Flexion of the wrist is possible to an angle of 50 degrees, normal being 70 degrees. Extension is normal; abduction — that is, away from the body — is 40 degrees, the normal 35 degrees; abduction, 25 degrees, normal being 45 degrees. The forearm can be fully pronated. That means the internal rotation of the arm. The supination of the forearm in 75 percent normal. There is a definite subluxation of the inferior ulnar radial articulation. The ulna can be moved up and down freely. X-ray examination shows a fracture at the junction of the middle and lower third of the right radius, united in malapposition, with definite marked angulation in an anterior direction. The length of the radius has been affected and there is an upper displacement of the radius of about 1/4 of an inch. The line of the wrist joint has been affected — I mean the angle that it makes with the bone. The line now is running from above forward, instead of normally above and backward.
"Now, opinion: This man sustained a fracture of the radius, which has united in malapposition. The angulation encroaches upon superimposed tendons. The malapposition also produces bad alignment at the wrist joint, limiting motions of the wrist. A definite injury to the inferior ulnar radial articulation caused subluxation of said joint; or it may be also defined as a dislocation. There is definite atrophy of the muscle tissue. The coldness of the hand represents a circulatory disturbance. Motions of the wrist, particularly flexion, when the fingers are flexed, due to the mechanical encroachment of the bony prominence, causes pain. There is a present loss of muscular power in the hand. I should estimate it about 50 per cent normal. The subluxation of the ulnar radial articulation, upon activity, always produces pain and swelling.
"I evaluated the case as follows: This man's occupation is a baker. His duties in this capacity, which is mostly hard manual labor, lifting heavy trays of dough, placing them in an oven, shaping dough, — all these tasks are very arduous and require full strength of the upper extremity for execution. If he is heroic enough to return to his former occupation, there is a possibility that he will not be able to keep up with this work or to deliver maximum endeavor. The pain that will result from activity will cause him to fatigue and tire very easily. I am of the definite opinion *Page 137 
that he is unable to return to his former occupation, and would advise him to seek other employment of a non-laborious nature.
Dr. H. Theodore Simon, testifying for the defendant, stated in substance that it is his opinion that plaintiff has fully recovered from the effects of the accident and that, while there is atrophy in the muscles of plaintiff's forearm as a result of nonuse, plaintiff can perform the duties of his employment without experiencing any pain and but little discomfort. He concedes that the plaintiff's right arm is slightly shorter than the left and that the radius of the forearm is somewhat disfigured. However, the doctor says that the shortening of the forearm does not disable plaintiff and that, if he makes a sincere attempt to work, he should have no difficulty whatever.
X-rays of plaintiff's arm were offered in evidence. Two of these X-rays were taken by Drs. Fortier and Gately and the other by Drs. Menville and Ane. All of the X-rays are supposed to show the condition of plaintiff's right arm taken from a lateral position. In the X-ray taken by Drs. Menville and Ane, the picture exhibits that the radius bone has been pulled appreciably out of line and that there is an apparent dislocation of this bone at its connection with the wrist. The medical men call this a "subluxation of the joint". The X-ray taken by Drs. Fortier 
Gately, which is also said to be a lateral picture of that member, while showing a malapposition of the broken radius, does not exhibit this fact as markedly as the X-ray taken by Drs. Menville and Ane.
Dr. Ane testified that his X-ray is a true lateral picture of plaintiff's arm. Dr. Maurer corroborates this statement. On the other hand, Dr. Simon says that the X-ray of Drs. Fortier and Gately is a true lateral and that the one taken by Drs. Menville Ane was made from an oblique angle. Neither Dr. Fortier nor Dr. Gately were produced to give first hand evidence as to the position from which their X-ray was taken. However, we find it unnecessary to decide whether the statement of Drs. Ane and Maurer should prevail over that of Dr. Simon for the reason that all of the X-rays taken of plaintiff's arm reveal that there is a distinct malapposition of the radius bone and, consequently, it makes little difference, with respect to the result to be reached in the case, whether one or all of the pictures are true lateral X-rays.
The irreconcilable conflict of opinions between Drs. Simon and Maurer, with respect to the permanence of plaintiff's disability, makes it most difficult for us to declare, with any degree of certainty, that either one or the other is correct, as both physicians are specialists of ability and men of integrity. Hence, with the scales in balance with respect to the expert evidence, it has been necessary to investigate the other facts in the case for the purpose of determining whether plaintiff has shown by a fair preponderance of evidence that he is permanently disabled. Careful study of these facts has satisfied us that they justify the maintenance of plaintiff's contention.
The X-ray pictures show beyond question that the compound fracture to plaintiff's arm is serious and that the radius bone has not healed properly. Plaintiff's testimony is that his arm still pains him and that it swells when he uses it. In addition, consideration must be given to the fact that, although defendant ceased payments of compensation to plaintiff in August, 1940, on the ground that he was fully cured, his arm was not in a sound condition and that Dr. Simon found it advisable to perform the operation known as a styloid process nearly a year after the time when compensation payments had been stopped. Finally, the evidence shows that, in spite of Dr. Simon's opinion that plaintiff can now perform his usual duties as a baker, the doctor concedes that there is an audible click of plaintiff's wrist each time that it is flexed and that, if plaintiff returns to work, he will experience some pain due to the atrophy which now exists in the muscles of his arm.
When all of the foregoing circumstances are taken as a whole and considered with the findings of Dr. Maurer, we think that they are sufficient to warrant the conclusion that plaintiff is presently disabled from performing the duties required of him as a baker and therefore is entitled to compensation for an indeterminate period, not to exceed 400 weeks. Indeed, the facts of this case are strikingly similar to those appearing in our recent decision of Jones v. National Casualty Co., 12 So.2d 75, where we held that the employee was entitled to compensation, notwithstanding an irreconcilable conflict in the expert opinion of seven doctors. *Page 138 
There is not the slightest suggestion in the case, other than the opinion of Dr. Simon, that plaintiff is a malingerer and that he has any desire to avoid work in order to receive compensation. If plaintiff's condition improves to the extent that he can go back to his work in the near future, the defendant has the right, under section 20 of the Employers' Liability Act, as amended, by Act No. 85 of 1926, to have the judgment modified.
For the reasons assigned, the judgment appealed from is amended so as to read as follows:
It is Ordered, Adjudged and Decreed that there be judgment herein in favor of plaintiff, Henry Mertz, and against defendant, Steve Von Schlemmer, operating under the trade name of S.V. Schlemmer's Bakery, for compensation at the rate of $13.85 per week during the period of his disability, not in excess of four hundred weeks, subject to a credit of $187, representing compensation previously paid, and also subject to a credit of $52.91, representing excess cost of the operation to his arm, together with legal interest from judicial demand on all payments falling due prior to the date of judicial demand and legal interest on all payments falling due after judicial demand from the date on which they have or will become due and exigible. And for all costs.
As thus amended, the judgment is affirmed.
Amended and affirmed.